OPINION AND ORDER GRANTING DEFENDANTS’ MOTION FOR PARTIAL SUMMARY JUDGMENT

ROSEN, District Judge.
I. INTRODUCTION
Plaintiff Leonard Desmond Owens (“Plaintiff”) filed this suit in Wayne County Circuit Court on November 28, 1994, alleging that Defendants Derrick Carpenay, John Hall, Jeffrey Paeholski, Glynn Davis, and Billy Jackson (“Defendants”), all City of Detroit Police Officers,[1] unlawfully arrested Plaintiff in violation of his Fourth and Fourteenth Amendment rights, and also committed the state-law torts of false arrest and malicious prosecution. Defendants removed this action to this Court based on Plaintiffs assertion of a federal claim under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1441(a), 1367(a).
On July 31, 1995, Defendants filed a motion for partial summary judgment, seeking summary judgment on Plaintiffs state-law claims of false arrest and malicious prosecution. Specifically, Defendants contend that probable cause existed to arrest and prosecute Plaintiff for the felony offense of carrying a handgun in an automobile. Accordingly, because lack of probable cause is an essential element of Plaintiffs state-law claims, Defendants argue that they are entitled to summary judgment on those claims. Plaintiff responded to this motion on September 20, 1995.
On November 16,1995, the Court conducted a hearing on Defendants’ motion. After considering the arguments raised by counsel at that hearing, the Court invited the parties to submit supplemental briefs; both Plaintiff and Defendants have done so. Upon reviewing the initial and supplemental materials submitted by the parties, as well as the arguments advanced by counsel at the hearing, the Court is now prepared to rule on Defendants’ motion. For the reasons stated below, the Court hereby grants Defendants’ motion for partial summary judgment.
II. FACTUAL BACKGROUND
Plaintiffs suit arises from the allegedly unlawful conduct of the Defendant police officers after they stopped Plaintiffs automobile, a red Ford Mustang, on March 20, 1994. In a subsequent search of Plaintiffs automobile, Defendant City of Detroit Police Officer Car-penay discovered a Glock 9-millimeter handgun in a duffel bag. Based on this discovery, Plaintiff was charged with the felony offense of carrying a handgun in a motor vehicle in violation of Mich.Comp.Laws § 750.227. In a signed statement to the police on the day of his arrest, Plaintiff admitted that he owned the handgun and the automobile in which it was found. However, Plaintiff contends that Defendants unlawfully arrested him before they searched his car, and that the subsequent discovery of the handgun therefore could not furnish probable cause for his prior arrest.
Plaintiff and Defendants offer significantly different versions of the incidents surrounding Plaintiffs arrest. However, the parties essentially agree on the events up to the point at which Plaintiffs automobile was stopped by Defendants. Plaintiff, a City of Detroit firefighter, was driving alone in his car, and was following a green Ford Mustang and a silver Corvette that were being driven by two of Plaintiffs friends, who were also firefighters. A van pulled in between the green Mustang and the two following cars, and the Corvette and Plaintiffs automobile accelerated around the van in order to keep in sight of the green Mustang. The three cars then turned into a residential neighborhood.
*561 Shortly thereafter, as the three cars parked in front of their destination, the van stopped among the parked ears and the Defendant police officers emerged. The officers were all members of a Detroit police narcotics team, and were all wearing their “raid uniforms” when they stopped Plaintiff and his friends. In addition, the officers apparently all emerged from the van with their weapons drawn. While the other officers attended to Plaintiffs friends, Officer Carpenay approached Plaintiff.
Sergeant Jackson, the only Defendant apart from Officer Carpenay who remains in this action, was the driver of the van and the highest ranking officer at the scene. At his deposition, Defendant Jackson cited three reasons for pursuing Plaintiff and his friends. First, he believed the cars were speeding, but he admitted at an evidentiary hearing during Plaintiffs state-court criminal prosecution that he could not estimate their speed and that no traffic tickets were issued. In fact, Defendants apparently were not carrying a ticket book suitable for issuing traffic tickets. Next, Defendant Jackson noted that two of the three cars passed the van to the left of the center line on a two-way street, but it is not clear whether this constituted a traffic violation. Finally, the fact that the three “hot” cars were “running together” or “caravanning” caused Defendant Jackson to suspect that the occupants of the cars might be involved in illegal drug transactions.
The parties provide substantially different accounts of the events following the arrival of the police van amidst the parked cars. Defendant Carpenay testified at his deposition that Plaintiff was still in his car with the driver’s window rolled down when the van arrived, and that he asked Plaintiff to exit the vehicle only upon seeing a handgun protruding from a duffel bag in the rear seat. However, Plaintiff contends that he was no longer in his car by the time the police van arrived, and that his ear was locked with its windows rolled up. Because Plaintiffs car has darkly tinted windows, he asserts that Defendant Carpenay could not have seen anything through the rolled-up windows.
Plaintiff claims that Defendant Carpenay’s questioning of him quickly escalated to a full-scale arrest after another officer remarked that one of Plaintiffs friends had a gun. At that point, according to Plaintiff, Defendant Carpenay grabbed Plaintiff by the waist of his pants, led him over to his ear, ordered him to spread his hands over the top of the vehicle, and patted him down. Despite finding nothing during that pat-down search, Defendant Carpenay then took Plaintiffs car keys from him, unlocked the car, and removed a duffel bag from the rear seat. Plaintiff asserts that Defendant Carpenay found the handgun at the bottom of the duffel bag only after first opening it and removing such items as a blanket, a pillow, and several sheets. Upon finding the gun, Defendant Carpenay handcuffed and formally arrested Plaintiff. Plaintiff was charged with the felony offense of carrying a handgun in a motor vehicle in violation of Mieh.Comp. Laws § 750.227.
On April 1, 1994, following a preliminary examination, Michigan District Court Judge Svenson ordered Plaintiff bound over for trial, based upon a finding that probable cause existed to believe that Plaintiff had committed the felony offense with which he was charged. However, on July 5, 1994, at the conclusion of an evidentiary hearing in the criminal case against Plaintiff, Michigan Recorder’s Court Judge Cahalan granted Plaintiffs motion to suppress, finding that the prosecution had failed to meet its burden of showing that the warrantless search of Plaintiffs vehicle was proper. All charges against Plaintiff were subsequently dismissed.
III. ARGUMENTS OF THE PARTIES
Defendants seek summary judgment on Plaintiffs state-law claims of false arrest and malicious prosecution. Defendants point out that lack of probable cause is a necessary element of both of these state-law torts, and assert that probable cause existed to arrest and prosecute Plaintiff on the charge of unlawfully carrying a handgun in a motor vehicle. According to Defendants, probable cause is established both by Plaintiffs admissions to the police shortly after his arrest and by a subsequent judicial finding of probable cause to bind Plaintiff over for trial. Defendants conclude that Plaintiff cannot sustain his state law claims.
*562 In response, Plaintiff contends that he had already been unlawfully arrested before Defendant Carpenay searched his automobile and found the handgun in the duffel bag. In Plaintiffs view, he was arrested when Defendant Carpenay physically seized him and forced him against his car upon hearing that one of Plaintiffs friends had a gun. Thus, regardless of whether probable cause was established once the gun was found, Plaintiff argues that he had already been arrested without probable cause. Moreover, Plaintiff asserts that the criminal case against him was prosecuted without probable cause, because Defendant Carpenay’s false testimony at the preliminary hearing led Michigan District Court Judge Svenson to erroneously conclude that probable cause existed to bind Plaintiff over for trial. Finally, Plaintiff argues that his own admissions to the police cannot establish probable cause to prosecute him, because those admissions were the product of an illegal arrest.
IV. ANALYSIS
A. The Standards Governing Consideration of a Motion for Summary Judgment
Under the controlling Federal Rule of Civil Procedure, this Court may properly grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c).
Three 1986 Supreme Court decisions— Matsushita Elec. Indus. Co. v. Zenith Radio Carp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) — ushered in a “new era” in the standards of review for a summary judgment motion. These eases, in the aggregate, lowered the movant’s burden on a summary judgment motion.[2] According to the Celotex Court:
In our view, the plain' language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party’s case, and on which that party will bear the burden of proof.
Celotex, 477 U.S. at 322, 106 S.Ct. at 2552.
After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment:
[*] Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
[*] The movant must meet the initial burden of showing “the absence of a genuine issue of material fact” as to an essential element of the non-movant’s case. [*] This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
[*] The respondent cannot rely on the hope that the trier of fact will disbelieve the movant’s denial of a disputed fact, but must “present affirmative evidence in order to defeat a properly supported motion for summary judgment.”
[*] The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
[*] The trial court has more discretion than in the “old era” in evaluating the respondent’s evidence. The respondent must “do more than simply show that there is some metaphysical doubt as to the material facts.” Further, “[wjhere the record taken as a whole could not lead a rational trier of fact to find” for the respondent, the motion should be granted. The trial court has at least *563 some discretion to determine whether the respondent’s claim is “implausible.”
See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir.1989) (footnotes with citations omitted). The Court will apply the above principles in evaluating Defendants’ motion for partial summary judgment.
B. Defendant Carpenay’s Discovery of the Handyun and the Judicial Determination of Probable Cause Do Not Foreclose Plaintiff’s State Law Claims of False Arrest and Malicious Prosecution.
In order to prevail in his state-law claims of false arrest and malicious prosecution, Plaintiff must show, respectively, that Defendants lacked probable cause to arrest him and to prosecute the criminal case against him. See Brewer v. Perrin, 132 Mich.App. 520, 349 N.W.2d 198, 201 (1984) (lack of probable cause is an element of a false arrest claim); Koski v. Vohs, 426 Mich. 424, 426, 395 N.W.2d 226, 227 (1986) (lack of probable cause is an element of a malicious prosecution claim). Defendants contend that Plaintiff is precluded in two ways from showing a lack of probable cause. First, Defendants assert that the undisputed facts of this case, when combined with Plaintiffs admissions to the police and his deposition testimony, conclusively establish probable cause to arrest and prosecute Plaintiff for the felony offense of carrying a handgun in a motor vehicle. Plaintiff does not dispute that Defendant Carpenay found a handgun in a duffel bag in his automobile; moreover, Plaintiff admits ownership of both the handgun and the automobile. Second, Defendants argue that the existence of probable cause to arrest and prosecute Plaintiff cannot be challenged in light of the judicial determination of probable cause by Michigan District Court Judge Svenson.
Regarding Plaintiffs false arrest claim, Defendants’ two contentions misconceive the nature of this Court’s probable cause inquiry. After-the-fact discoveries and subsequent judicial determinations do not bear on the crucial question in Plaintiffs claim of false arrest: whether, at the time of the arrest, Defendants had probable cause to arrest Plaintiff. As stated by the Michigan Court of Appeals, “[pjrobable cause to arrest is determined by whether or not the ‘facts available to the police at the moment of arrest would have justified a fair-minded person of average intelligence and judgment in believing that [the arrestee] had committed a felony.’ ” Brewer v. Perrin, 132 Mich.App. 520, 349 N.W.2d 198, 201 (1984) (quoting People v. Goeckerman, 126 Mich.App. 517, 521, 337 N.W.2d 557, 560 (1983)).
Accordingly, taking Plaintiffs version of his arrest as true — that is, assuming Plaintiff was arrested prior to Defendant Carpe-nay’s search of his automobile and discovery of his handgun, and assuming that the discovery of the handgun provided the sole basis for Plaintiffs arrest[3] — the Court rejects Defendants’ claim that probable cause to arrest Plaintiff has been conclusively established. Rather, under Plaintiffs account, the facts available to Defendant Carpenay at the moment of arrest did not establish probable cause to believe that Plaintiff had committed the felony offense of carrying a handgun in a motor vehicle. Similarly, a judicial determination of probable cause to bind Plaintiff over for trial, rendered in light of the discovery of the handgun which allegedly occurred only after the arrest, cannot immunize Defendants’ initial decision to arrest Plaintiff. Cf. Malley v. Briggs, 475 U.S. 335, 344-46, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (finding that the § 1983 equivalent of a false arrest claim is not precluded by a magistrate’s subsequent issuance of a warrant); Simmons v. Pryor, 26 F.3d 650, 653 (7th Cir.1993), cert. denied, - U.S. -, 114 S.Ct. 1833, 128 L.Ed.2d 461 (1994).
Whether Plaintiff can establish a lack of probable cause to criminally prosecute him presents a closer question. By the time of the preliminary hearing before Judge Sven-son, Plaintiffs handgun indisputably had been found in his automobile in apparent violation of Michigan law, and Plaintiff had already admitted to the elements of this criminal violation. Moreover, Judge Sven-son’s finding of probable cause appears to *564 flatly preclude Plaintiff’s necessary proof of the contrary in order to prevail in his malicious prosecution claim. However, Plaintiff suggests two reasons why these apparent indicia of probable cause to criminally prosecute him should not be given preclusive effect. First, Plaintiff argues that Judge Sven-son would not have found probable cause if Defendant Carpenay had truthfully recounted the events surrounding Plaintiffs arrest at the preliminary hearing. Next, Plaintiff alleges that his statements to the police following his arrest were the product of Defendants’ illegal actions, and he asserts that Judge Svenson’s determination of probable cause should be discounted to the extent that it rested on those illegally obtained statements.
Plaintiff is correct that Defendant Carpenay’s intentionally false testimony at the preliminary hearing, if proven, would support his malicious prosecution claim. In Adams v. Metiva, 31 F.3d 375, 388 (6th Cir.1994), the Sixth Circuit found that the plaintiff could sustain his malicious prosecution claim under Michigan law by proving that the defendant police officer “intentionally lied in his incident report in order to proeure a criminal proceeding against [the plaintiff] which defendant knew was not supported by probable cause.” [4] Because Plaintiff and Defendants offer significantly different accounts of the events surrounding Plaintiffs arrest, the Court cannot determine at this stage of the litigation whether Defendant Carpenay knowingly misrepresented his actions in his testimony at the preliminary hearing. Accordingly, under the present record, this Court cannot give preclusive effect to Judge Svenson’s determination of probable cause.[5]
Moreover, although the law on this question is less clear, it appears that the preclu-sive effect of Judge Svenson’s determination of probable cause is undermined to the extent that it was based on statements obtained from Plaintiff following his allegedly illegal arrest.[6] As an initial matter, it is clear that Plaintiffs statements to the police should have been suppressed in subsequent criminal proceedings if, in fact, those statements were the fruit of an illegal arrest. See Wong Sun v. United States, 371 U.S. 471, 485-87, 83 . S.Ct. 407, 416-17, 9 L.Ed.2d 441 (1963). It seems to follow that a judicial determination *565 of probable cause cannot shield Defendants from liability for malicious prosecution if that determination depended upon statements that should have been suppressed. Neither the parties nor this Court, however, have identified any ease law squarely addressing this issue.[7] In any event, having determined that Plaintiffs allegation of false testimony is alone sufficient to defeat the preclusive effect of Judge Svenson’s determination of probable cause, the Court need not resolve this difficult question.
Finally, the Court rejects Defendants’ argument that, regardless of the state of the record before Judge Svenson, the record before this Court invalidates Plaintiffs malicious prosecution claim by revealing the existence of probable cause to arrest Plaintiff. In Defendants’ view, even if Plaintiffs statements to the police are disregarded, Plaintiffs subsequent admissions at his deposition independently establish the elements of the offense of carrying a weapon in a motor vehicle. This argument indicates that Defendants want it both ways — they wish this Court to accord preclusive effect to Judge Svenson’s finding of probable cause, but they also ask this Court to conduct a de novo determination of probable cause based on all of the evidence that has been produced to this point, without regard for the lineage of that evidence. Such a de novo determination, however, is inconsistent with this Court’s limited probable cause inquiry in the context of a malicious prosecution claim. Simply put, this Court cannot indulge in hindsight, but instead must focus on Defendants’ roles in the criminal prosecution of Plaintiff in light of what they knew at the time. Because Plaintiff alleges that Defendants tainted Judge Svenson’s probable cause determination by failing to truthfully disclose the events surrounding Plaintiffs arrest, and because questions of fact remain with respect to this allegation, the Court concludes that Plaintiffs malicious prosecution claim is not foreclosed by his after-the-fact deposition testimony.
C. Plaintiff Was Not Arrested Prior to the Discovery of the Handgun.
The relevance of the above inquiry into the existence of probable cause turns upon the assumption that Plaintiff was indeed arrested prior to Defendant Carpenay’s discovery of the gun. The discovery of the gun clearly gave Defendant Carpenay probable cause to arrest Plaintiff. Thus, if Plaintiff was not arrested before that point, his false arrest claim must fail. Similarly, the validity of Plaintiff’s malicious prosecution claim would be called into question, because Judge Sven-son’s determination of probable cause would no longer rest upon evidence and statements tainted by a prior illegal arrest.
It is worth noting, as an initial matter, that Defendants need not have had probable cause to arrest Plaintiff in order to have stopped Plaintiff and his fiiends and subsequently discovered the handgun in Plaintiffs automobile. First, Defendants’ initial stop of Plaintiff and his fiiends appears entirely proper. Because Defendants were part of a narcotics unit, Plaintiff contends that the stop for a traffic violation was a mere “pretext” for Defendants’ actual (and unfounded) suspicion that Plaintiff and his fiiends were engaged in an illegal drug transaction. This “pretext” argument cannot stand, however, in light of the Sixth Circuit’s ruling in United States v. Ferguson, 8 F.3d 385 (6th Cir.1993), cert. denied, — U.S. -, 115 S.Ct. 97, 130 *566 L.Ed.2d 47 (1994). The Ferguson court eschewed any speculative inquiry whether an officer “would have” stopped a suspect solely based on a traffic violation:
We hold that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. We focus not on whether a reasonable officer “would” have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer “could” have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop. The stop is reasonable if there was probable cause, and it is irrelevant what else the officer knew or suspected about the traffic violation at the time of the stop. It is also irrelevant whether the stop in question is sufficiently ordinary or routine according to the general practice of the police department or the particular officer making the stop.
8 F.3d at 391.[8]
Ferguson thus disposes of Plaintiffs various suggestions that the initial stop was somehow improper. Defendant Jackson testified at his deposition that he believed Plaintiff and his friends were speeding and had carelessly passed the police van. Regardless of whether Defendant Jackson could precisely establish the speed of the cars, he had probable cause to believe that a traffic violation had occurred.[9] Because of this probable cause, it does not matter whether Defendants also suspected that Plaintiff and his friends were about to engage in a drug transaction. Similarly, under Ferguson, the existence of probable cause renders irrelevant the fact that Defendants were part of a narcotics unit that typically does not issue tickets for traffic violations.
Next, the case law demonstrates that, given a sufficient level of suspicion, Defendants properly could have searched Plaintiffs automobile for weapons without first arresting Plaintiff. In Michigan v. Long, 468 U.S. 1032, 1051, 103 S.Ct. 3469, 3482, 77 L.Ed.2d 1201 (1983), the Supreme Court held that a police officer’s “articulable and objectively reasonable belief that [a] suspect is potentially dangerous” permitted that officer “to conduct an area search of the passenger compartment [of an automobile] to uncover weapons.” Moreover, the Court found that the search of a pouch lying on the front seat of the automobile was proper because “[t]he trial court determined that ... [it] could have contained a weapon.” 463 U.S. at 1050-51, 103 S.Ct. at 3481.
In the instant case, once Defendant Carpe-nay’s fellow officer found that one of Plain-tifPs friends was carrying a handgun, it became objectively reasonable for Defendant Carpenay to believe that Plaintiff was possibly armed and therefore potentially dangerous. Consequently, at that point, Defendant Carpenay was entitled to perform a pat-down search of Plaintiff and search Plaintiffs automobile, as well as the duffel bag within its passenger compartment, without first arresting Plaintiff.[10]
*567 Accordingly, having concluded that Defendant Carpenay acted properly in conducting a limited search of Plaintiff and his ear once his fellow officers discovered that one of Plaintiffs friends was carrying a gun, the Court need only consider whether Plaintiff was subjected to an illegal seizure at some point. So long as the detention of Plaintiff was narrowly tailored to its underlying justification, there would be no illegal seizure. Thus, a limited detention was proper while Defendants were carrying out the purposes of their initial traffic stop. See United States v. Mesa, 62 F.3d 159, 162 (6th Cir.1995). However, any further detention could be justified only by a “reasonable suspicion” of some wrongdoing beyond the traffic violation. Mesa, 62 F.3d at 162. This reasonable suspicion need not have been tantamount to probable cause to believe that Plaintiff had engaged in criminal activity. Rather, as explained by the Sixth Circuit, “[u]nder Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and related cases, a type of seizure has emerged that is less than a full arrest and justified by less than probable cause.” United States v. Richardson, 949 F.2d 851, 856 (6th Cir.1991).
In the instant case, Plaintiff contends that a reasonable person in his position would have believed himself under arrest, rather than subject to merely an appropriately limited form of detention. In particular, he testified at his deposition that Defendant Carpenay had his gun drawn when he first approached Plaintiff,[11] and that Defendant Carpenay, upon learning that another officer had discovered a gun, grabbed Plaintiff by the waist of his pants, marched him over to his car, forced him to spread his arms over the top of the car, and took his ear keys. According to Plaintiff, these actions by Defendant Carpenay significantly restrained his freedom of action, and therefore were tantamount to a full arrest.
However, Terry and its progeny do not establish that the use of force necessarily equates to a full arrest, but instead require that “[t]he scope of the detention must be carefully tailored to its underlying justification.” Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Accordingly, courts have found that police officers may draw guns or use handcuffs in the course of a Terry stop when such measures are necessary under the circumstances confronting those officers. See, e.g., United States v. Walker, No. 94-3521, 1995 WL 141343, at *5-*6 (6th Cir. Mar. 31, 1995) (finding that handcuffs and drawn guns did not escalate an investigative stop into an arrest, in light of the FBI agents’ suspicion of a drug transaction); United States v. Perdue, 8 F.3d 1455, 1462-63 (10th Cir.1993) (finding that police officers were justified in executing a Terry stop with their weapons drawn because they knew that guns had been found on the property they were searching at the time the defendant drove up); United States v. Smith, 3 F.3d 1088, 1094-96 (7th Cir.1993) (finding that the use of handcuffs did not convert a Terry stop into an arrest, in light of the time of night, the officers’ suspicion of illegal drug activity, and the fact that the detention took place in a neighborhood that had a high incidence of drug trafficking), cert. denied, 510 U.S. 1061, 114 S.Ct. 733, 126 L.Ed.2d 696 (1994).
This Court concludes that the actions taken by Defendant Carpenay under the circumstances with which he was confronted did not constitute an illegal seizure. Accepting Plaintiffs version of events as true, once Defendant Carpenay learned that one of Plaintiffs friends was armed, he used only the amount of force necessary to ensure the safety of himself and his fellow officers in view of the possibility that Plaintiff might also have been armed. Moreover, at that point, Defendant Carpenay’s actions were entirely directed at determining whether Plaintiff was carrying a gun, either on his person ' or in his automobile. None of the cases cited by Plaintiff feature this direct threat to an officer’s safety. This threat to safety, however, is the key justification for Defendant Car-penay’s use of an appropriate level of force without placing Plaintiff under arrest.
*568 Similarly, the Court cannot conclude that Plaintiff was arrested prior to this weapons search, simply by virtue of the fact that Defendant Carpenay purportedly approached Plaintiff with his weapon drawn. At his deposition, Plaintiff testified as follows about his initial encounter with Defendant Carpenay:
Q: At, when you were on Braile Street, was Carpenay the first officer who approached you after you had parked and exited your vehicle?
A: Yes, sir.
Q: What did he say to you as closely as you recall?
A: I don’t recall him saying anything. I remember him having his weapon drawn and me informing him that I was a firefighter; and his only response was, oh, cool.
Q: Did he have his weapon pointed at you at that point?
A: No. It was drawn and pointed, but not pointed directly at me.
(Plaintiff Dep. at 25-26.)
Under the totality of the circumstances, the Court does not find that Defendant Car-penay’s actions upon initially approaching Plaintiff constituted a sufficient “show of authority” to lead a reasonable person to believe that his liberty was being restrained. Richardson, 949 F.2d at 855. Even accepting Plaintiffs contention that Defendant Car-penay approached with his weapon drawn, Plaintiffs deposition testimony indicates that the weapon was not being brandished in a threatening manner, and that Defendant Carpenay immediately relaxed upon being informed that Plaintiff was a firefighter. Thus, it is evident that Plaintiff did not view Defendant Carpenay’s drawn weapon as a show of force, such that Plaintiff perceived a restraint on his freedom of movement. Nei-' ther does Plaintiff cite any verbal threats or physical contact that, viewed in conjunction with the drawn gun, might have constituted a significant show of authority. Finally, from Plaintiffs deposition testimony, it appears that his initial interaction with Defendant Carpenay was quite short in duration, and escalated almost immediately due to the discovery that one of Plaintiffs friends had a gun. Accordingly, the Court declines to hold that Defendant Carpenay’s drawn weapon, standing alone, was sufficient to escalate a limited investigative stop into a full-scale arrest.[12]
Consequently, because Plaintiff was not under arrest prior to Defendant Carpenay’s discovery of the handgun in Plaintiffs automobile, it follows that Plaintiff was not arrested without probable cause. Thus, Plaintiffs claim of false arrest must fail. It is true that this Court’s reasoning apparently was not shared by Michigan Recorder’s Court Judge Cahalan, who granted Plaintiffs motion to suppress in Plaintiffs criminal trial. However, Judge Cahalan’s ruling does not bind Defendants in the instant action, because Defendants were not parties to Plaintiffs criminal trial, and thus lacked any opportunity to litigate the issues surrounding Plaintiffs arrest. See Franklin v. City of Pontiac, 887 F.Supp. 978, 982-83 (E.D.Mich.1995); Lichon v. American Universal Ins. Co., 435 Mich. 408, 427-28, 459 N.W.2d 288, 297-98 (1990). Moreover, the record before this Court does not indicate the basis for Judge Cahalan’s ruling, and thus this Court cannot evaluate the reasoning behind that ruling.
However, the lack of an illegal arrest does not necessarily foreclose Plaintiffs malicious prosecution claim. Rather, because Plaintiff alleges that Defendant Carpenay’s testimony at the preliminary hearing misrepresented the events surrounding Plaintiffs arrest, there is still the possibility that this testimony tainted the subsequent judicial determination of probable cause. Yet, without an illegal arrest which would bar introduction of the discovery of the gun at the preliminary hearing, it is clear that the presence of the handgun in Plaintiffs automobile itself estab *569 lished probable cause to arrest Plaintiff and bind him over for trial.
Accordingly, any misrepresentations by Defendant Carpenay at the preliminary hearing would not have materially altered Judge Svenson’s determination of probable cause. Cf. Adams v. Metiva, 31 F.3d 375, 388-89 (6th Cir.1994) (indicating that, under Michigan law, an action for malicious prosecution can be sustained only where the false facts sworn to by a police officer were necessary to a determination of probable cause). No intentional falsehoods he might have uttered would have negated the simple fact that each element of the offense with which Plaintiff was charged was apparently satisfied: a handgun belonging to Plaintiff was found in an automobile owned by Plaintiff. Thus, this Court concludes that the criminal prosecution of Plaintiff did not lack probable cause, and that Plaintiff therefore cannot sustain his claim of malicious prosecution.
V. CONCLUSION
For the foregoing reasons,
NOW, THEREFORE, IT IS HEREBY ORDERED that Defendants’ Motion for Partial Summary Judgment be GRANTED. Accordingly, summary judgment is hereby entered in favor of Defendants on Counts II and III of Plaintiffs Complaint.

. Officers Hall, Paeholski, and Davis have been dismissed from this action, leaving only Officer Carpenay and Sergeant Jackson as Defendants.

. "Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials.” 10A Charles A. Wright, Arthur R. Miller, Mary Kay Kane et al., Federal Practice & Procedure, § 2727, at 35 (Supp.1994).

. The Court considers the validity of these assumptions later in this opinion.

. The case cited by Defendants, Cole v. City of Detroit, No. 93-CV-73824-DT, 1994 U.S.Dist. LEXIS 10635 (E.D.Mich. May 24, 1994), does not hold to the contrary. Although the court stated that "[t]he establishment of probable cause at a post-arrest judicial proceeding precludes claims for false arrest and malicious prosecution," 1994 U.S.Dist. LEXIS 10635, at *1, the court also specifically noted the absence of any allegation that the defendant “knew and withheld information which would have belied the finding of probable cause in support of the warrant,” 1994 U.S.Dist. LEXIS 10635, at *4.
In contrast, Plaintiff here has alleged that Defendant Carpenay withheld information that would have materially affected Judge Svenson's probable cause determination. Plaintiff has presented at least indirect evidentiary support for this allegation by offering deposition testimony of the events surrounding his arrest that apparently contradicts the version offered by Defendant Car-penay at the preliminary hearing. Moreover, at the preliminary hearing, Judge Svenson expressed "some skepticism about the testimony” of Defendant Carpenay. (Prelim.Exam.Tr. at 21.) This evidence is sufficient to raise a genuine issue with respect to Plaintiff's allegation that Defendant Carpenay testified falsely at the hearing.

. However, the Court cannot agree with Plaintiff's further contention that subsequent proceedings before the Michigan courts conclusively establish that Plaintiff's account of his arrest is true and Defendants’ account is false. After an evi-dentiary hearing during Plaintiff's criminal prosecution, Michigan Recorder’s Court Judge Caha-lan found that the testimony offered by Plaintiff was credible, and accordingly granted Plaintiff's motion to suppress. However, this finding by a Michigan court cannot be given preclusive effect in the instant action, because Defendants were not parties to the criminal prosecution of Plaintiff. See Warda v. Commissioner of Internal Revenue, 15 F.3d 533, 537-38 (6th Cir.) (noting that, under Michigan law, mutuality is required in order to apply the doctrine of issue preclusion), cert. denied, - U.S. -, 115 S.Ct. 55, 130 L.Ed.2d 14 (1994).

.The record before this Court does not reveal how much, if at all, Judge Svenson relied on Plaintiff's admissions in determining that probable cause existed to bind Plaintiff over for trial. From the preliminary hearing transcript, it appears that Judge Svenson declined to consider whether evidence or statements should be excluded as a result of alleged Fourth Amendment violations, stating that "this is a subject matter of an evidentiary hearing or even a trial, but not for me.” (Prelim.Exam.Tr. at 22.)

. In their supplemental brief, Defendants cite various cases as support for the proposition that an “exclusionary rule” inquiry has no place in civil damage actions. This argument once again reveals Defendants’ failure to focus on the relevant time frame. In order to determine whether Judge Svenson’s determination should have pre-clusive effect, it is necessary to consider the evidence and circumstances as they existed at the time of that determination. For example, it plainly would make no sense to speak of giving preclusive effect to a judicial determination of probable cause where all of the evidence that would support such a finding came to light only after that determination was made.
Accordingly, the relevant question here is not whether evidence should be considered or excluded in this action. Instead, this Court must consider whether Judge Svenson’s reliance on allegedly illegally-obtained evidence and statements prevents giving preclusive effect to that court’s finding of probable cause. Because the preliminaiy hearing before Judge Svenson was unquestionably a criminal proceeding, the cases cited by Defendants are simply inapposite here.

. The Supreme Court recently reached virtually the same result in Whren v. United States, - U.S. -, -, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Whren, like Ferguson, holds that a traffic stop is reasonable under the Fourth Amendment so long as a police officer has probable cause to believe that a traffic violation has occurred. — U.S. at -, 116 S.Ct. at 1777.

. From the excerpts of the preliminary hearing transcript presently in the record before this Court, it appears that Judge Svenson also found that the officers had a sufficient basis for concluding that civil traffic infractions had occurred. However, Judge Svenson found that there was insufficient evidence to indicate that the more severe misdemeanor offense of reckless driving had occurred.

. It is thus immaterial whether, as Plaintiff alleges, Michigan law forbids full arrests for traffic violations. Although, under New York v. Belton, 453 U.S. 454, 460-61, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), a full arrest would have authorized Defendants to examine the passenger compartment of Plaintiff’s automobile, as well as any containers found therein, Long demonstrates that such a full arrest is not necessary to justify a limited search of a vehicle’s passenger compartment for weapons.

. At his deposition, Defendant Carpenay denied that his weapon was drawn as he approached Plaintiff's vehicle.

. Defendants contend that the drawn weapon was justified in light of the officers' suspicion of drug activity. However, the Court cannot agree that the “caravanning” of “hot cars,” standing alone, was sufficient to give rise to a reasonable suspicion of drug activity that would in turn justify a limited use of force.