STATE OF MICHIGAN

 COURT OF APPEALS

JEFFREY MINOR, UNPUBLISHED
 November 25, 2014
 Plaintiff-Appellee,

v No. 314220
 Oakland Circuit Court
CITY OF SYLVAN LAKE, JEFFREY FICK, and LC No. 2010-109596-NO
OAKLAND COUNTY,

 Defendants,

and

MARK SILVER,

 Defendant-Appellant.

JEFFREY MINOR,

 Plaintiff-Appellee,

v No. 314230
 Oakland Circuit Court
CITY OF SYLVAN LAKE, MARK SILVER, and LC No. 2010-109596-NO
OAKLAND COUNTY,

 Defendants,

and

JEFFREY FICK,

 Defendant-Appellant.

JEFFREY MINOR,

 Plaintiff-Counterdefendant-
 Appellee,

 -1-
v No. 316793
 Oakland Circuit Court
CITY OF SYLVAN LAKE, LC No. 2010-109596-NO

 Defendant-Appellant,

JEFFREY FICK,

 Defendant-Counterplaintiff,
and

MARK SILVER and OAKLAND COUNTY,

 Defendants.

 ON RECONSIDERATION

Before: MURPHY, C.J., and WHITBECK and TALBOT, JJ.

MURPHY, C.J. (concurring in part and dissenting in part).

 I respectfully disagree with the majority’s conclusion that there was no genuine issue of
material fact that defendant police officer Jeffrey Fick had probable cause to arrest plaintiff
Jeffrey Minor for violation of Sylvan Lake Ordinance, Part II, § 10-69, which makes it “unlawful
for any owner to allow a dog to stray beyond his premises unless under the reasonable control of
some person.” I conclude that there was documentary evidence sufficient to create a factual
dispute regarding whether Fick had probable cause to arrest plaintiff for violation of the
ordinance. I would hold, however, that the circumstances supported a conclusion that, as a
matter of law, Fick had reasonable suspicion to briefly detain plaintiff to investigate a possible
violation of the ordinance. And I would also conclude as a matter of law that plaintiff resisted
and obstructed Fick during the attempted detention and that Fick therefore had probable cause to
arrest plaintiff for resisting and obstructing a police officer in the performance of his duties. I
would reverse the trial court’s ruling denying summary disposition on that basis, except with
respect to the claims of malicious prosecution and intentional infliction of emotional distress
(IIED), but only to the extent that they do not pertain to alleged wrongdoing in making the arrest
itself.

 Officer Fick testified in his deposition that he stopped his patrol car in front of plaintiff’s
home because he observed the dog “run out – dart out to the road.” According to Fick, the dog
had been in plaintiff’s yard when he first saw the animal, and the dog then ran into the street.
The dog went only as far as the middle of the two-lane road. When the dog reached the center of
the street, Fick heard plaintiff call for the dog. Fick then observed the dog immediately return to
plaintiff in plaintiff’s yard. Fick later changed his testimony slightly, recalling that he may not
have heard plaintiff call for the dog as his windows were rolled up, but the dog did quickly return
to plaintiff’s property after first reaching the middle of the road. Fick claimed that he then rolled

 -2-
down his window and asked plaintiff his name and whether the dog belonged to plaintiff. Fick
testified that plaintiff answered the questions. According to Fick, plaintiff acted “upset” in
responding to his questions. Fick exited his patrol car to find out why plaintiff was upset and to
issue plaintiff a ticket for violation of the ordinance. While Fick testified that the dog’s actions
in briefly darting into the road was not a big deal and that he would ordinarily have just given a
warning, he chose to exercise his discretion and issue plaintiff a ticket.1

 Plaintiff testified that he was caring for the neighbor’s dog, Molly, and that the dog was
standing next to him in his driveway while plaintiff gardened and carried on a conversation with
another neighbor who lived and was standing directly across the street from plaintiff’s home.
Plaintiff then turned away from the neighbor to attend to his gardening, and shortly thereafter
plaintiff heard the neighbor yell, “No, Molly.” Plaintiff testified that he spun around and saw
Molly entering the street, at which time plaintiff yelled for her to get back. According to
plaintiff, the dog quickly scampered back onto plaintiff’s driveway, and plaintiff grabbed Molly
by the collar and started leading her back to his home for a time-out. Plaintiff testified that it was
then when Officer Fick rolled down his window and told plaintiff that they needed to talk.
Plaintiff further testified that he informed Fick that he first needed to take the dog into the house
and then they could talk. Plaintiff acknowledged that he was upset, but this was because Molly
had run into the street and plaintiff was responsible for the dog. Plaintiff answered some initial
questions posed by Fick, but then realized that Fick was being malicious and trying to give
plaintiff a hard time. The majority opinion accurately describes what occurred thereafter, and
plaintiff’s conduct and actions can only be characterized as resisting and obstructing an officer in
the performance of his duties. See MCL 750.81d.2

 We review de novo a trial court’s ruling on a motion for summary disposition. Spiek v
Dep’t of Transp, 456 Mich 331, 337; 572 NW2d 201 (1998). The applicability of governmental
immunity and the statutory exceptions to immunity are likewise reviewed de novo on appeal.
Snead v John Carlo, Inc, 294 Mich App 343, 354; 813 NW2d 294 (2011). MCR 2.116(C)(7)
provides for summary disposition when a claim is “barred because of . . . immunity granted by
law . . . .” The movant may submit affidavits, depositions, admissions, or other documentary
evidence in support of the motion if substantively admissible. Odom v Wayne Co, 482 Mich
459, 466; 760 NW2d 217 (2008). The complaint’s contents must be accepted as true unless
contradicted by the documentary evidence. Id. This Court must consider the documentary
evidence in a light most favorable to the nonmoving party for purposes of MCR 2.116(C)(7).
RDM Holdings, Ltd v Continental Plastics Co, 281 Mich App 678, 687; 762 NW2d 529 (2008).
“If there is no factual dispute, whether a plaintiff’s claim is barred under a principle set forth in

1
 The prosecutor who handled the criminal charges against plaintiff testified in her deposition as
follows: “[T]his is what I gathered from talking to Officer Fick, no one had ever been taken into
custody or arrested for a dog at-large violation, that had never happened before.”
2
 MCL 750.81d did not “abrogate[] the common-law right to resist illegal police conduct.”
People v Moreno, 491 Mich 38, 41; 814 NW2d 624 (2012). As explained below, I conclude, as
a matter of law, that Fick made a lawful command to briefly detain plaintiff.

 -3-
MCR 2.116(C)(7) is a question of law for the court to decide.” Id. When, however, a relevant
factual dispute does exist, summary disposition is not appropriate. Id.

 As a preliminary matter, I wish to speak to the issue concerning jurisdiction, which, in
my view, implicates the law of the case doctrine. The majority rejects plaintiff’s argument that
we lack jurisdiction over defendants’ appeal as of right. Plaintiff contends that the trial court’s
order was not an order denying summary disposition on the basis of governmental immunity, as
is necessary to trigger an appeal by right under MCR 7.203(A)(1) and MCR 7.202(6)(a)(v). As
pointed out by plaintiff in his motion for reconsideration, the prior panel that heard the first
appeal in this very case ruled that it could not address defendants’ argument that probable cause
existed, given that the issue of probable cause implicated MCR 2.116(C)(8) and not MCR
2.116(C)(7) and was thus not a matter of governmental immunity. Minor v City of Sylvan Lake,
unpublished opinion per curiam of the Court of Appeals, issued June 28, 2012 (Docket No.
302166), slip op at 7 n 8. More specifically, the previous panel observed:

 Defendants' assertion that probable cause existed as a matter of law and
 precludes plaintiff from establishing the elements of false arrest and
 imprisonment, abuse of process and intentional infliction of emotional distress.
 However, that argument would be based upon MCR 2.116(C)(8), not (C)(7), and
 defendants' motion was based on (C)(7). . . . Defendant's argument regarding
 probable cause does not relate to whether these defendants are entitled to
 governmental immunity. [Id.]

 At the trial level, and prior to the initial appeal, defendants argued lack of probable cause
under both MCR 2.116(C)(7) and (8). The trial court rejected the probable cause arguments,
including for purposes of immunity under MCR 2.116(C)(7). And on appeal to the first panel,
defendants specifically argued that they were entitled to governmental immunity under MCR
2.116(C)(7) because there was probable cause to arrest. In that procedural posture and based on
the quotation above, this Court clearly refused to address defendants’ probable cause-(C)(7)-
immunity claim, finding that the question of probable cause did not concern immunity but went
solely to whether a claim was stated relative to MCR 2.116(C)(8). Thus, there is indeed a law of
the case problem. See Grace v Grace, 253 Mich App 357, 362-363; 655 NW2d 595 (2002)
(“The law of the case doctrine provides that if an appellate court has decided a legal issue and
remanded the case for further proceedings, the legal issue determined by the appellate court will
not be differently decided on a subsequent appeal in the same case where the facts remain
materially the same.”).

 Moreover, especially with respect to the state law claims, the issue of probable cause
does not appear to relate to the question of immunity. A governmental employee has immunity
from liability with respect to an intentional tort claim, as are involved here, when the conduct at
issue occurred during the course of employment, the employee acted, or reasonably believed he
was acting, within the scope of his authority, the actions were undertaken in good faith, with an
absence of malice, and the conduct was discretionary; all of these elements must be shown.
Odom, 482 Mich at 480. “The mere existence of probable cause . . . is not the proper inquiry”
relative to the question of governmental immunity for intentional torts under MCL 691.1407(3).
Id. at 481. On the other hand, probable cause would appear to be relevant to the question of
immunity relative to the federal claims under 42 USC 1983. “Qualified immunity shields

 -4-
government officials from civil damages liability unless the official violated a statutory or
constitutional right that was clearly established at the time of the challenged conduct.” Reichle v
Howards, __ US __; 132 S Ct 2088, 2093; 182 L Ed 2d 985 (2012). Thus, if there was no
constitutional violation to begin with, which is ordinarily the case when probable cause exists,
immunity would seem to technically shield the defendant, although it could also be said that no
cause of action is established in that circumstance.

 In light of these concerns and the law of the case doctrine, I would proceed on the basis
or assumption that the order denying summary disposition was only appealable by leave granted,
followed by this panel concomitantly granting leave, thereby allowing us to reach the merits of
the appeal and the question of probable cause in the context of addressing the elements of the
causes of action. See Wardell v Hincka, 297 Mich App 127, 133 n 1; 822 NW2d 278 (2012).

 “If an officer has probable cause to believe that an individual has committed even a very
minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest
the offender.” Atwater v City of Lago Vista, 532 US 318, 354; 121 S Ct 1536; 149 L Ed 2d 549
(2001). “Probable cause to arrest exists where the facts and circumstances within an officer's
knowledge and of which he has reasonably trustworthy information are sufficient in themselves
to warrant a man of reasonable caution in the belief that an offense has been or is being
committed.” People v Champion, 452 Mich 92, 115; 549 NW2d 849 (1996). In People v
Cipriano, 431 Mich 315, 342; 429 NW2d 781 (1988), our Supreme Court observed:

 An arresting officer's subjective characterization of the circumstances
 surrounding an arrest does not determine its legality. Rather, probable cause to
 justify an arrest has always been examined under a standard of objective
 reasonableness without regard to the underlying intent or motivation of the
 officers involved. [Citations omitted.]

 Here, in my view, the documentary evidence gave rise to a factual dispute regarding
whether Fick had probable cause to arrest plaintiff for violating the ordinance, which is a
misdemeanor based on a presumption under the Sylvan Lake Code of Ordinances for ordinance
violations that are not specifically designated as civil infractions, such as § 10-69. See Sylvan
Lake Ordinance, Part II, § 1-7(b) (“Unless a violation of an ordinance is specifically designated
in the text of the ordinance to be a municipal civil infraction, a violation shall be deemed to be a
misdemeanor.”).3 Again, § 10-69 makes it a misdemeanor “for any owner to allow a dog to

3
 Sylvan Lake Ordinance, Part II, § 1-7(c)(1)[a] provides:
 A person convicted of violating an ordinance provision punishable as a
 misdemeanor shall be guilty of a misdemeanor, and shall be sentenced by the
 court for a period not to exceed 90 days in jail and/or ordered to pay a fine not to
 exceed $500.00, unless the ordinance corresponds to a violation of state law that
 is a misdemeanor for which the maximum period of imprisonment is 93 days, in
 which case the sentence of the court shall be for a period not to exceed 93 days in
 jail and/or a fine not to exceed $500.00.

 -5-
stray beyond his premises unless under the reasonable control of some person.” Given its
misdemeanor status and the possibility of jail time, one must read a mens rea element into the
ordinance for the reasons explained below, assuming that the word “allow” in the ordinance does
not already require some type of criminal intent or knowledge.

 “[C]riminal offenses that do not require a criminal intent are disfavored.” People v
Tombs, 472 Mich 446, 453; 697 NW2d 494 (2005). There is a “longstanding presumption that
all crimes require criminal intent.” Id. at 454. The United States Supreme Court “has expressly
held that the presumption in favor of a criminal intent or mens rea requirement applies to each
element of a statutory crime.” Id. at 454-455. The existence of mens rea is the rule of Anglo-
American criminal jurisprudence, rather than the exception. Id. at 455. Silence with respect to
criminal intent does not, by itself, suggest a legislative desire to dispense with the conventional
mens rea element. Id. at 456. “Liability without criminal intent will not be found in the absence
of an express or implied indication of congressional intent to dispense with the criminal intent
element.” Id. at 453. The Tombs Court then reiterated that “[t]he Court will infer the presence
of the [criminal intent] element unless a statute contains an express or implied indication that the
legislative body wanted to dispense with it.” Id. at 454.

 I see no express or implied indication in § 10-69 that the city’s legislative body intended
to dispense with the criminal intent element and make it a strict-liability ordinance. See People v
Janes, 302 Mich App 34, 37-38; 836 NW2d 883 (2013) (concluding that a statute making it a
crime to own a dangerous animal causing injury, MCL 287.323[2], although silent as to criminal
intent, must be construed to require proof that the owner knew that his or her animal was
dangerous; it is not a strict-liability offense). Indeed, the term “allow,” as used in § 10-69, would
suggest that criminal liability does not arise unless the owner intentionally permitted his or her
dog to stray off the property or had knowledge that the dog was straying and did nothing. See
Random House Webster’s College Dictionary (2001) (first definition for the word “allow” is “to
give permission to or for; permit”). Absent a mens rea requirement, an individual’s dog could
bolt from a home’s door that was momentarily and accidently left open, with the owner then
facing arrest and a potential jail sentence under § 10-69 if the dog runs beyond the property line.
In my opinion, the ordinance must be read to encompass only those situations in which a dog’s
owner intentionally or knowingly allowed his or her dog to stray beyond the premises absent
reasonable control of the animal.

 Officer Fick’s testimony revealed that he merely saw the dog run from plaintiff’s
property into the street and then immediately return to plaintiff’s property. A reasonable juror
could conclude that Officer Fick did not have knowledge of facts and circumstances sufficient to
warrant a man of reasonable caution that the ordinance had been violated. See Champion, 431
Mich at 342 (defining probable cause). A rational view of the evidence might suggest that Fick
did not have any or adequate information that would support a conclusion that criminal intent
existed or that plaintiff “allowed” the dog to stray from the property. Indeed, Fick’s observations
and the circumstances could be construed as directly undermining a finding of criminal intent,
and plaintiff’s account of the incident certainly detracts from a finding that he intentionally or
knowingly allowed the dog to stray from the property.

 -6-
 With respect to reasonable suspicion, the Court in Champion, 452 Mich at 98-99,
observed:

 Police officers may make a valid investigatory stop if they possess
 “reasonable suspicion” that crime is afoot. Reasonable suspicion entails
 something more than an inchoate or unparticularized suspicion or “hunch,” but
 less than the level of suspicion required for probable cause.

 A valid investigatory stop must be justified at its inception and must be
 reasonably related in scope to the circumstances that justified interference by the
 police with a person's security. Justification must be based on an objective
 manifestation that the person stopped was or was about to be engaged in criminal
 activity as judged by those versed in the field of law enforcement when viewed
 under the totality of the circumstances. The detaining officer must have had a
 particularized and objective basis for the suspicion of criminal activity.

 While I believe that it presents a close call, I would conclude that there was no genuine
issue of material fact that Officer Fick had at least reasonable suspicion that the ordinance had
been violated, such that he was entitled, minimally, to make inquiry and briefly detain plaintiff
for purposes of an explanation. There is no dispute that the dog strayed off of plaintiff’s property
and that the dog was not under plaintiff’s control at the time. Plaintiff had been standing outside
with the dog absent any restraints whatsoever, so one might infer that plaintiff was knowingly
allowing the dog free reign, although it did not definitively establish as a matter of law that Fick
had probable cause to arrest plaintiff under the ordinance. Under the totality of the
circumstances, I think reasonable suspicion existed as a matter of law and that it was entirely
reasonable for Fick to briefly detain plaintiff, pose some questions to him, and attempt to obtain
some answers concerning the officer’s observation of the dog running in the street. Officer Fick,
therefore, made a lawful command to plaintiff, and I would hold that there was no genuine issue
of material fact that plaintiff responded by resisting and obstructing Fick, whom plaintiff knew
was a police officer, in the performance of his duties, violating MCL 750.81d. See People v
Corr, 287 Mich App 499, 503; 788 NW2d 860 (2010) (to prove charges of resisting and
obstructing under MCL 750.81d, the prosecution must show acts of resistance and obstruction
committed by the defendant against a police officer and that the defendant knew or had reason to
know that he or she was resisting or obstructing the police officer in the performance of his or
her duties); MCL 750.81d(7)(a) (“‘Obstruct’ includes the use or threatened use of physical
interference or force or a knowing failure to comply with a lawful command.”). Accordingly, I
would also hold that there was no genuine issue of material fact that Fick had probable cause to
arrest plaintiff for resisting and obstructing an officer. I would reverse the trial court’s ruling
denying summary disposition on that basis, except with respect to the claims of malicious
prosecution and IIED, but, as explained below, only to the extent that those claims do not pertain
to alleged wrongdoing in making the arrest itself. I would reject the majority’s conclusion that
Fick, as a matter of law, had probable cause to arrest plaintiff for violating § 10-69.

 I agree with the majority’s revision or clarification of its holding in regard to the IIED
claim. Although an IIED claim predicated on a false arrest cannot be established if there existed
probable cause to arrest, Walsh v Taylor, 263 Mich App 618, 634; 689 NW2d 506 (2004), a
review of the first amended complaint reflects that it was not specifically based on a false arrest

 -7-
but upon the allegedly deplorable and abusive treatment received by plaintiff as recounted in
several general allegations and adopted by reference in the IIED count. Therefore, the IIED
claim, while somewhat limited, survives.

 With respect to the state and federal malicious prosecution claims, as embedded in count
III of the amended complaint, caselaw indicates that the existence of probable cause to arrest a
person does not, in and of itself, defeat a claim for malicious prosecution depending on how the
claim is framed. In Odom, 482 Mich at 480-481, our Supreme Court discussed state law claims
of false imprisonment/arrest and malicious prosecution and noted that the existence of probable
cause is relevant to the analysis of the false arrest and false imprisonment claims, as those claims
cannot be sustained when an arrest is legal. The Court, citing Lewis v Farmer Jack Div, Inc, 415
Mich 212, 218 n 2; 327 NW2d 893 (1982), in support of this contention, did not make the same
claim or assertion with respect to malicious prosecution. Odom, 482 Mich at 481. Indeed, in
Lewis, 415 Mich at 218 n 2, the Michigan Supreme Court stated:

 An action for false arrest cannot be maintained where the arrest is legal
 even if the person arrested is in fact innocent. If the arrest is legal, there has not
 been a false arrest. A person who has been legally arrested may bring an action
 for malicious prosecution, but is required to show that the defendant acted with
 malice.

 ...

 “‘[One] who instigates or participates in a lawful arrest, as for example an
 arrest made under a properly issued warrant by an officer charged with the duty of
 enforcing it, may become liable for malicious prosecution, . . . but he is not liable
 for false imprisonment, since no false imprisonment has occurred.’” [Citation
 omitted.]

 With respect to the elements of malicious prosecution, there is no element specifically
requiring proof of an absence of probable cause to arrest; rather, the plaintiff can establish a
malicious prosecution claim by showing a lack of probable cause for the “proceedings,”
Friedman v Dozorc, 412 Mich 1, 48; 312 NW2d 585 (1981), or a lack of probable cause for the
defendant’s “actions,” Walsh, 263 Mich App at 632-633, or a lack of probable cause for “the
criminal prosecution,” Sykes v Anderson, 625 F3d 294, 308 (CA 6, 2010). In Sykes, id. at 310-
311, the Sixth Circuit noted that, as distinguished from a claim of false arrest, a claim of
malicious prosecution requires consideration of not only whether there existed probable cause to
arrest, but whether the defendants had probable cause to initiate and pursue criminal
proceedings.

 My review of plaintiff’s first amended complaint reveals that plaintiff did not base the
state and federal malicious prosecution claims solely on the act of his arrest alone, but that he
also focused on post-arrest actions that supported a continuing prosecution until it was finally
derailed by the prosecutor, not defendants. Plaintiff alleged, “Defendants maliciously initiated
and continued the proceedings, without any evidence or cause to support such an action.”
(Emphasis added.) In the complaint, plaintiff also alleged that defendants Fick and Silver
“immediately made the decision to pursue a felony complaint and warrant against [plaintiff]

 -8-
based on false and trumped up allegations regarding [plaintiff’s] reaction after being arrested
over the unleashed dog” and that defendants “purposely waited until Monday to proceed with the
arraignment, forcing [plaintiff] to spend two days in jail.” (Emphasis added.) Plaintiff argues
that defendants Fick and Silver collaborated to solicit and obtain false witness statements for
purposes of a file compiled for the prosecution and that Fick lied at the preliminary examination.
Providing “intentionally false testimony at [a] preliminary hearing, if proven, would support . . .
[a] malicious prosecution claim.” Owens v Carpenay, 939 F Supp 558, 564 (ED Mich, 1996).
Thus, even if the majority’s conclusion were correct that there existed probable cause to arrest
plaintiff for violation of the dog-leash ordinance, the majority fails to address post-arrest conduct
and fails to appreciate that probable cause to arrest does not necessarily defeat the malicious
prosecution claims.

 I would reverse the trial court’s ruling denying summary disposition, except with respect
to the claims of malicious prosecution and IIED, but only to the extent that they do not pertain to
alleged wrongdoing in making the arrest itself. Accordingly, I would affirm in part and reverse
in part. Therefore, I respectfully concur in part and dissent in part relative to the majority’s
opinion.

 /s/ William B. Murphy

 -9-