51 F.3d 274
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald K. WALKER, Defendant-Appellant.
 No. 94-3521.
 United States Court of Appeals, Sixth Circuit.
 March 31, 1995.
 
 Before: NORRIS and DAUGHTREY, Circuit Judges, and FEIKENS, District Judge.*
 PER CURIAM.
 
 
 1
 The defendant, Reginald Walker, appeals his conviction and 30-year sentence for conspiracy to distribute cocaine. He contends (1) that the district court erred in denying him a suppression hearing separate from that of his co-defendant; (2) that the court erred in denying his motion to suppress; (3) that his trial counsel was ineffective; and (4) that he should have been permitted to withdraw his guilty plea. We find no reversible error and affirm.
 
 1. Factual and Procedural Background
 
 2
 While FBI agents were watching a suspected drug-house in Cleveland, Ohio, they saw Carmelo Gonzales drive to the house, walk to the back of the house, exit carrying a white plastic bag, and watch up and down the street until a car with the defendant and Donnie Speed drove into a nearby abandoned gas station. Gonzales walked to the station, talked to Walker and Speed, made furtive gestures, and left without the package. Agent Richards followed Speed's car and notified two other agents, who then followed him. Agent Richards believed that the defendant and Speed noticed him because Speed drove erratically and both men looked behind them repeatedly. Speed eventually pulled over on a ramp onto the expressway, and Richards was forced to pass them, but he immediately pulled over in front of Speed and Walker's car. The back-up agents pulled over behind the defendant and Speed, approached their car with guns drawn, ordered them out of the car, and handcuffed them, allegedly as an investigative detention. Agent Richards then noticed on the back seat a bag that looked like the one Gonzales had carried to the car earlier. At the top of the bag he could see a white block that he recognized as cocaine. It turned out to be one of five one-kilogram blocks of cocaine in the bag. The defendant was arrested at that point and was found to have $600 on his person. A subsequent search of his residence turned up $41,000.00 in cash.
 
 
 3
 Walker's attorney filed a motion to suppress evidence of the cocaine in the car, on the ground that the stop occurred without reasonable suspicion or probable cause. However, on the day of his and Speed's hearing, Walker--through his attorney--withdrew his motion. At Speed's hearing, two agents described watching Gonzales leave the suspected stash house with the plastic bag, approach Speed's car at an abandoned gas station, lean in the car, and leave without the bag. Agents testified that Speed and Walker appeared to notice Richards behind them and that they pulled over on the on-ramp. They testified that Richards stopped in front of Speed and that Agents Vogt and Harnett stopped behind them and later handcuffed them. Speed testified, however, that he and Walker had stopped to dress their hot dogs when a stranger put the bag in the back seat and Walker told him to drive to the highway. Speed testified that car trouble caused his erratic driving.
 
 
 4
 The court denied Speed's motion to suppress, finding reasonable suspicion for the Terry stop and concluding that the seizure of cocaine in plain view was constitutionally valid. Walker renewed his motion to suppress on the day of trial, but his counsel stated:
 
 
 5
 At this time based--it's the same facts, the same argument, everything is similar to [Speed]'s argument along with the case [his attorney] presented. I would at this time again renew my motion, reinstate my motion to suppress, knowing that it will be overruled.
 
 
 6
 The court noted that it "didn't want to treat this lightly" and asked if there were "any facts that could have been elicited and were not because were pointed to one defendant and not the other...." The government simply stated that it would focus more on the actions of the defendant in the car, but that the testimony would basically be the same. Walker's counsel agreed that "basically it was the same surveillance, the same Cutlass, the same stop, the same plain view." He conceded that the judge "would obviously make the same ruling for the passenger that he made for the driver because it's the car that the package was in that both of the gentlemen were seated in. So that nothing changes." The court concluded:
 
 
 7
 [T]he position of the driver and the position of the passenger vis-a-vis the stop is not the same, not always necessarily the same. In this case taking into consideration all of the testimony including the testimony relating to what happened in the gas station, it seems to me sufficient that the Court could logically say that the opinion in relation to Speed would be the same as that in relation to Walker under these circumstances. I don't want to overlook anything. What happened at the gas station, I think, is important.
 
 
 8
 Defense counsel asserted that in this case the situation did not differ with regard to his client. After further oral argument, the district court concluded that the same ruling should apply in Walker's case.
 
 
 9
 After his motion to suppress was denied, Walker decided to plead guilty. During the plea hearing, Walker asked why his motion was denied without a separate hearing, and the court indicated that the same facts applied to his case that applied in Speed's case. The defendant insisted that he had his own version of the events leading up to his arrest and wished to present it to the judge.[1] The court nevertheless continued the hearing, instructing Walker at length about his rights. The district judge explained that in calculating Walker's sentence, the base offense level would be determined under the sentencing guidelines and would require a consideration of certain relevant factors, including Walker's criminal history. The district judge made it clear that, regardless of the plea agreement and the presentence report, the final determination of Walker's sentence was up to the court to decide.
 
 
 10
 At his first scheduled sentencing hearing, the defendant initially sought to rescind his plea because he was not given a separate suppression hearing. The court delayed sentencing in order to let Walker review a transcript of the plea hearing. At a second sentencing hearing, defense counsel also asserted that Walker was unhappy about the increase in his base offense level from 30 (as agreed to by the government) to 37, based on the probation officer's later determination that Walker qualified as a career offender because of his criminal history. The court denied Walker's motion to withdraw his guilty plea and sentenced him to 360 months in prison as a career offender with an offense level of 37 and a criminal history category of VI.
 
 2. Failure to Provide a Suppression Hearing
 
 11
 The defendant first challenges the district court's denial of his suppression motion in the absence of a second hearing, arguing that the court erred by relying on evidence presented at Speed's hearing. He insists that the facts elicited at a co-defendant's hearing are an insufficient basis for denying a defendant's separate motion to suppress, citing as authority United States v. Schmidt, 604 F.2d 236 (3d Cir.1979), and United States v. Thoresen, 428 F.2d 654 (9th Cir.1970). In Schmidt, a husband was indicted with his wife. When his motion to suppress was denied, he pleaded guilty. He nevertheless appealed the court's finding that because he challenged the same search as his wife and would have presented no new evidence, he was not entitled to a separate suppression hearing. On appeal, the Third Circuit held that:
 
 
 12
 [I]t is elemental that a defendant may not be denied a suppression hearing solely on the basis of a previous hearing to which the defendant was not a party, unless there is a showing that the defendant had stipulated to or acquiesced in the trial court's reliance on the transcript of the prior hearing.
 
 
 13
 Schmidt, 604 F.2d at 238 (relying on Thoresen, 428 F.2d 654). Thus, the defendant argues that he was entitled to an independent hearing.
 
 
 14
 The government, on the other hand, argues that the court did not err by not holding a separate suppression hearing. It admits that a separate hearing should usually be given, but insists that Schmidt 's exception, when a "defendant ha[s] stipulated to or acquiesced in the trial court's reliance on the transcript of the prior hearing", is applicable here because Walker's lawyer stipulated to the facts presented at Speed's hearing and stated that his argument on Walker's behalf would be the same as that offered by Speed's attorney.
 
 
 15
 We agree. Despite the district judge's careful questioning, Walker's counsel reiterated on more than one occasion that the facts applicable to his client's suppression motion were identical to the facts elicited at Speed's hearing. Because Walker's attorney clearly acquiesced in the court's failure to hold an independent hearing on Walker's motion to suppress, there is no ground on which to predicate reversible error.
 
 3. Ineffective Assistance of Counsel
 
 16
 Anticipating the possibility of a successful waiver argument by the government, the defendant contends that in stipulating away his right to a separate suppression hearing, his trial attorney rendered ineffective assistance of counsel. As the government notes, however, we generally will not review an ineffective assistance of counsel claim that is raised for the first time on appeal, United States v. Straughter, 950 F.2d 1223, 1234 (6th Cir.1991) cert. denied, 112 S.Ct. 1505 (1992), because such a claim is more effectively presented in a post-conviction proceeding in which the parties can develop a record adequately. United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). While it is true that in rare instances we have reviewed such a claim on direct appeal, we have done so only when the record is adequate to permit full review. See e.g., Straughter, 950 F.2d at 1234; United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (per curiam ). In this case, there is no explanation by Walker's counsel concerning his reasons for withdrawing his client's suppression motion and then later pursuing it, without insisting on an independent hearing. Thus, we do not have before us an adequate record upon which to review the claim, and we conclude that the matter is better left to a post-conviction hearing under 28 U.S.C. Sec. 2255.
 
 4. Failure to Order Suppression
 
 17
 Walker argues that the denial of his suppression motion was error, even on the basis of the facts revealed in Speed's hearing. The district court found that the FBI had enough reasonable suspicion to detain the defendant and that the evidence in plain view subsequent to that "detention" was legally seized. The defendant, however, insists that he was illegally arrested without probable cause before the officers found the drugs and, therefore, that the cocaine should have been suppressed. He argues that in United States v. McQuagge, 787 F.Supp. 637 (E.D.Tex.1991), aff'd, United States v. Mallory, 8 F.3d 23 (5th Cir.1993), in which agents with guns drawn stopped and searched a defendant's car and handcuffed the defendant, the court held that an arrest had occurred. That court found that the determination of whether an arrest had been made depended on the "evaluation of the testimony of those who were present at the time" because the issue in determining whether an arrest or a Terry stop occurred is whether "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrests." Id. at 644-5 (citing United States v. Corral-Franco, 848 F.2d 536, 540 (5th Cir.1988). Moreover, the McQuagge court found that the government had to prove that its detention was limited in scope and duration to satisfy the conditions of an investigative seizure, under Florida v. Royer, 460 U.S. 491, 504 (1983). Because he was removed from the car at gunpoint and handcuffed, the defendant argues, the agents used means associated with formal arrest to secure him. Corral-Franco, 848 F.2d at 540 (handcuffs are associated with arrest). Alleging that they had seen no drugs or money at that point and could point to no activity suggestive of criminal intent, the defendant argues that no probable cause supported his de facto arrest. Thus, he insists, the cocaine discovered was the fruit of an illegal arrest and should be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963). In addition, on the same facts, he argues that no reasonable suspicion existed to support an investigative detention.
 
 
 18
 The government, on the other hand, insists that the agents had a reasonable suspicion of criminal activity and were warranted in detaining Walker. Terry v. Ohio, 392 U.S. 1, 30 (1968). It emphasizes that the court may rely on "the totality of the circumstances" to determine the reasonableness of the detention. United States v. Cortez, 449 U.S. 411, 417-9 (1981). It states, moreover, that "if the conduct as a whole would appear suspect to one familiar with the practices of narcotics couriers, albeit the pattern of behavior is innocuous to the untrained observer," then reasonable suspicion exists. United States v. Ramirez-Cifuentes, 682 F.2d 337, 342 (2d Cir.1982).
 
 
 19
 Moreover, the government argues that the defendant was not arrested. It insists that no "litmus-paper test ... for determining when a seizure exceeds the bounds of an investigative stop" exists, according to Royer, 460 U.S. at 506, but that the determination depends generally on the reasonableness of the stop under the circumstances. This reasonableness, in turn, is judged first by whether specific, articulable facts gave rise to a reasonable suspicion and, second, by whether the intrusion on the suspect's personal security is reasonably related in scope to the situation at hand. Terry, 392 U.S. at 19-20. Terry stops must last no longer than necessary and should employ the least intrusive means available to dispel the police officer's suspicion. United States v. Brignoni-Ponce, 422 U.S. 873, 881-2 (1975); Royer, 460 U.S. at 500. The government, however, cites numerous cases permitting a display of force in a stop. It insists that because a cocaine transaction had occurred recently from the house from which Gonzales came, and because the circumstances surrounding the arrest suggested that a drug transaction was occurring, the officers reasonably could have believed that Walker and Speed were armed. United States v. Gahagan, 865 F.2d 1490 (6th Cir.), cert. denied, 492 U.S. 918 (1989). Moreover, the suspects' evasive driving could have legitimately caused the agents to believe that the suspects would flee, so restriction was necessary. Finally, the detention was brief, lasting only as long as it took the agent to see the cocaine. Based on this information, the government argues that this stop was a valid investigative stop and that the evidence seized was in plain view and legally seized. Coolidge v. New Hampshire, 403 U.S. 443 (1971).
 
 
 20
 In this case, the agents' suspicion was reasonable. Gonzales, a suspected drug conspirator, came outside with a bag the day after officers had received cocaine in a controlled buy from the house from which Gonzales came. He placed the bag in the back seat of a car after brief conversation with the defendant and co-defendant at an abandoned gas station nearby. As they left the area, Walker and Speed appeared to notice the police and attempted to evade them by their driving. Walker and Speed eventually pulled over, as if to let Richards pass them. This activity provided reasonable suspicion to believe that criminal activity was afoot.
 
 
 21
 The real question is whether this stop, valid at its inception, improperly ripened into an arrest before the cocaine was spotted and, therefore, was without benefit of probable cause. In resolving this issue, we look to Terry, which requires, as a first step, a determination of "whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20. The action of law enforcement officers effecting the stop must not be "more intrusive than necessary to effectuate an investigative detention otherwise authorized by the Terry line of cases". Royer, 460 U.S. at 504; United States v. Sharpe, 470 U.S. 675, 682 (1985) (20-minute delay reasonable detention); Brignoni-Ponce, 422 U.S. at 881. Moreover, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short amount of time". Royer, 460 U.S. at 500.
 
 
 22
 The defendant argues that the test for whether a seizure is a stop or an arrest is whether a "reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest", citing McQuigge, 787 F.Supp. at 644. This proposition is not wholly accurate, however. Case law permits the use of force, such as handcuffs and guns, to effect a stop when such a show of force is reasonable under the circumstances of the stop. For example, in United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir.1993), the Tenth Circuit found that "[w]hile investigative stops generally must be fairly non-intrusive, officers may take necessary steps to protect themselves if the circumstances reasonably warrant such measures". The court found that when stopping a couple found on property on which guns were present and marijuana was being cultivated, the officers were "justified in displaying some force ... as a means of neutralizing the potential danger". In that case, the officers permissibly drew their guns and forced the man onto the ground. Moreover, the Seventh Circuit was "unwilling to hold that the handcuffing of a suspect without probable cause to arrest is unlawful per se". United States v. Smith, 3 F.3d 1088, 1094 (7th Cir.1993); cert. denied, 114 S.Ct. 733 (1994). See also United States v. Merkley, 988 F.2d 1062, 1064 (10th Cir.1993) ("a law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists") (citing United States v. Alexander, 907 F.2d 269, 272 (2d Cir.1990), cert. denied, 498 U.S. 1095 (1991)); United States v. Merritt, 695 F.2d 1263, 1271-3 (10th Cir.1982), cert. denied, 461 U.S. 916 (1983) (permitting weapons search of truck of suspect and the use of guns where police reasonably believe guns are necessary for their protection; "while the police are questioning a suspect during an investigative stop there is always some risk that he may attempt to escape and grab a weapon that was hidden in the vehicle before he was summoned out of it"); United States v. Kapperman, 764 F.2d 786, 790 n. 4 (11th Cir.1985) (inquiry is the reasonableness of the handcuffing); United States v. Glenna, 878 F.2d 967, 972 (7th Cir.1989); United States v. White, 648 F.2d 29 (D.C.Cir.), cert. denied, 454 U.S. 924 (1981).
 
 
 23
 Measured against these cases, validating the use of handcuffs and guns to protect officers in potentially dangerous situations, the facts in the instant case suggest that the detention of Speed and Walker was merely a stop that reasonably required some protective measures. The suspects had been alerted to the presence of the agents and tried to evade them, thus suggesting to the officers that they might flee. They were suspected of carrying drugs. Clearly, the agents could rely on the teaching of experience that weapons are frequently used in drug transactions. Gahagan, 865 F.2d at 1499. Under these circumstances, we conclude that despite the fact that handcuffs and drawn guns are usually a sign of arrest, Walker and Speed were initially detained pursuant to Terry, that protective measures taken by the agents were reasonable, and that the subsequent seizure of drugs from the car as not constitutionally invalid.
 
 5. Failure to Permit Withdrawal of the Plea
 
 24
 Finally, Walker argues that the district court wrongly denied him an opportunity to withdraw his guilty plea under Fed.R.Crim.P. 32(d), which permits plea withdrawals for "any fair and just reason". This court reviews denials of motions to withdraw a plea only for abuse of discretion. United States v. Stephens, 906 F.2d 251, 252 (6th Cir.1990).
 
 
 25
 In seeking to withdraw his sentence in the district court, the defendant's principal complaint continued to be the court's failure to provide him with his own suppression hearing and act favorably on his motion to suppress. The district judge struggled mightily, without success, to explain to Walker why the suppression rulings did not constitute grounds for withdrawal of his guilty plea. On appeal, the defendant has shifted the emphasis of his argument and now contends, in addition, that his plea was not knowing and voluntary. He claims that he thought that he was subject to an offense level of no more than 30, and "did not realize th[at] points would be added to this base level for his criminal history." Furthermore, he contends, neither the information provided in the plea agreement nor the advice of his counsel indicated that he might be found to be a "career offender" under the guidelines. He insists, finally, that there was a "reasonable probability" that he would have gone to trial and risked a life sentence, rather than accept a 30-year sentence, had he been properly advised.
 
 
 26
 After a careful review of the record, particularly the transcript of the guilty plea submission hearing, we conclude that the district court did not abuse its discretion in denying the defendant's motion to withdraw his plea. The record indicates that on at least two occasions during the hearing, the district court warned Walker that the base level of 30 contained in the plea agreement was only a starting point and that his actual sentence would depend upon (among other things) what the presentencc report showed about his criminal history. Although the district judge did not use the term "career offender"--undoubtedly because he had no indication at that time that Walker would be found to qualify as a "career offender"--the defendant had to know from the repeated warnings he was given that his prior criminal record might require an increase his offense level and, therefore, have a detrimental effect on his punishment. Clearly, he was advised on more than one occasion that he was subject to a sentence of "ten years to life" if he pleaded guilty.
 
 
 27
 Perhaps it would be advisable, as a preliminary matter, for sentencing judges to attempt to determine whether defendants who wish to plead guilty appear to qualify as "career offenders" and, if so, to give appropriate advice concerning what effect "career offender" status will have on their sentences. Perhaps it would be advisable, too, to permit voluntary withdrawal of a guilty plea in the absence of such advice. But, where--as here--the district judge has correctly stated the applicable maximum penalty and has told the defendant that his actual sentence will depend on his criminal history, we cannot say that the court has committed an abuse of discretion in later denying a motion to withdraw the plea.
 
 
 28
 Nor would existing Sixth Circuit case law require us to do so. In Stephens, a defendant argued that he was "blindsided" when his base level offense was not determined until after his guilty plea. This court, however, stated that the "mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement". Stephens, 906 F.2d at 253. Consequently, because the district court had advised Stephens of the consequences of his plea and the applicability of the guidelines, we upheld the court's subsequent refusal to permit plea withdrawal. We likewise hold in this case that the district court did not err in refusing to permit withdrawal based simply on the defendant's allegation that he did not understand that his offense level could be increased based on findings in his presentence report.
 
 
 29
 For the reasons stated above, we find no reversible error and AFFIRM the judgment of the district court.
 
 
 
 *
 The Hon. John Feikens, United States Senior District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 From a letter sent by the defendant to the district judge after the guilty plea was entered and from other statements Walker made at the subsequent sentencing hearings, it appears that Walker was concerned that the court hear testimony specifically concerning the circumstances of his detention by FBI agents at the time Speed's car was stopped on the interstate on-ramp. In the letter Walker wrote: "Your honor I know for sure that if you knew that I was handcuffed and force[d] to lay my face on top of the hood of the car before the agents knew what was in that bag, plus the chain was broken that were on my neck, your ruling may have been different. I don't think it would've change[d] your ruling but the law protects me as well as the law gives out sentences, you should still know what really happen[ed] as far as the malicious misconduct of my rights by the agents."