**Thomas GARDNER, Plaintiff,**

v.

**VILLAGE OF GRAND RIVER, OHIO, et al., Defendants.**

**No. 1:94 CV 2337.**

United States District Court, N.D. Ohio, Eastern Division.

Jan. 31, 1997.

Mark V. Webber, Sergio Anthony Carano, Carl E. Cormany, Morris M. Reznick, Bernard S. Goldfarb, Cleveland, OH, for plaintiff.

Gerald R. Walker, Redmond, Walker & Koerner, Painesville, OH, Todd M. Raskin, Kimberly A. Brennan, Mazanec, Raskin & Ryder, Solon, OH, for defendant, Village of Grand River.

Jeffrey I. Sherwin, Timothy J. Kollin, Office of the Prosecuting Attorney, Cleveland, OH, for defendant Cuyahoga County, Ohio.

Joseph R. Tira, Quandt, Giffels, Buck & Rodgers, Cleveland, OH, for defendant, Village of Fairport Harbor, Thomas M. Coffman, Robert V. Dilgren.

NUGENT, District Judge.

This matter comes before the Court upon three separate Motions for Summary Judgment (Doc Nos. 58, 61 and 65): One by Defendants Village of Grand River, Ohio, Mayor and Safety Director John Herendeen, Chief of Police John Salerno, and Police Officer Anthony W. Powalie; one by Defendants the Village of Fairport Harbor, Ohio, Mayor and Safety Director Thomas M. Coffman, Chief of Police Robert V. Dilgren, and Police Officer Christopher J. Cichon; and a third by Defendants Cuyahoga County, Ohio, Sheriff Gerald T. McFaul, and Dispatcher James Jewell. For the following reasons, each of the Defendants' motions are GRANTED.

On November 14, 1994, Plaintiff Thomas Gardner (hereinafter "Mr. Gardner") filed a Complaint asserting a variety of claims pertaining to his October 17, 1994 traffic stop. Mr. Gardner's Third Amended Complaint sets forth twenty-two separate counts including claims arising under 42 U.S.C. § 1983, the Ohio Revised Code, as well as various state tort allegations arising under common law.

On July 19, 1995, Judge Paul R. Matia, who initially presided over the case, reassigned the case to this Court. In each of the named Motions for Summary Judgment the Defendants' argue that summary judgment should be granted in their favor, as no genuine issue of any material fact in controversy has been presented by Mr. Gardner to preclude a judgment as a matter of law. Mr. Gardner, on the other hand, contends that he has produced sufficient evidence to demonstrate a cause of action.

I.

A review of the pleadings, depositions, and exhibits reveals the following facts. On the morning of October 17, 1994, Officer Powalie was performing stationary radar monitoring of passing traffic on State Route 283 in the Village of Grand River, Ohio. Officer Powalie recorded Mr. Gardner's vehicle traveling forty-two miles per hour in a twenty-five mile per hour zone. Officer Powalie stopped Mr. Gardner to issue a traffic citation for speeding. Officer Powalie approached Mr. Gardner's vehicle and asked to see his driver's license. Upon receipt of Mr. Gardner's drivers license, Officer Powalie radioed Mr. Gardner's social security number for verification into the dispatcher for the Central Communications Division of the Lake County Sheriff's Department. At approximately 9:51 a.m., Dispatcher Secoy processed the license plate number provided by Officer Powalie through the Law Enforcement Automated

Data System (hereinafter "LEADS"). LEADS indicated that Mr. Gardner's social security number matched a social security number used by an individual named Kaschell Stokes who was wanted in connection with an outstanding felony warrant issued by the Cuyahoga County Common Pleas Court. The warrant cautioned that Mr. Stokes was to be considered "armed and dangerous". The warrant further indicated that Kaschell Stokes used several aliases, but not one for Thomas Gardner. Dispatcher Secoy relayed all of this information to Officer Powalie. Officer Powalie requested a physical description of Mr. Gardner from Dispatcher Secoy. The description which was provided by Dispatcher Secoy matched the physical description of Mr. Gardner. While taking additional steps to confirm the validity of the warrant with Dispatcher Secoy, Officer Powalie observed Mr. Gardner, who was sitting in his vehicle, "lunge" over to the passenger side of the vehicle where he appeared to be reaching for something. Officer Powalie told Dispatcher Secoy what was happening. Dispatcher Secoy indicated that Fairport Harbor Police would be on the scene within moments to provide back up assistance.

Officer Powalie exited his vehicle with his service revolver drawn. He ordered Mr. Gardner to remain in his vehicle but to place his hands outside of the window. Mr. Gardner complied. At this point, Officer Cichon, a Fairport Harbor police officer arrived on the scene and exited his vehicle with his service revolver drawn. Mr. Gardner was ordered to get out of his car, put his hands over his head and put his back towards the officer's voice. Mr. Gardner complied. Mr. Gardner was then told to walk backwards toward the officers, stop, place his hands on his head and kneel down, which he did. Officer Powalie promptly handcuffed Mr. Gardner and told him he was wanted on a felony warrant. After conducting a pat-down search of Mr. Gardner, Officer Powalie placed Mr. Gardner inside his patrol car.

Based on Mr. Gardner's assertions that the warrant was not for him, Officer Powalie continued to check the validity of the warrant. He asked the dispatcher to provide him with the subject's distinguishing "marks, scars and tattoos" data. LEADS indicated that the subject had a pierced ear, a scar on his nose and tattoos on his chest and left forearm. Upon receiving this information the officers asked Mr. Gardner if he would consent to a visual search for tattoos and scars. Mr. Gardner complied, lifting up his shirt and sleeves. No tattoos or scars of any kind were observed.

Dispatcher Secoy then contacted the Cuyahoga County Sheriff's Department and informed them that Officers Powalie and Cichon may have in custody a suspect for whom the Cuyahoga County Common Pleas Court had issued a warrant, but said there were physical discrepancies between the suspect and the subject of the warrant including their race and age. Kaschell Stokes was described as a 5'8", black male with medium brown skin tone and brown eyes. Mr. Gardner is a white male, 5'11", with gray hair and brown eyes. Based on the information provided to him, Officer Jewell instructed Dispatcher Secoy to have the officers hold the suspect while he confirmed the information. Officer Jewell then instructed his Warrant Unit to bring in all of the information regarding the outstanding warrant. Officer Jewell observed a photo of Kaschell Stokes, which showed him to be a black male. After a review of the records, Officer Jewell determined that Mr. Gardner's social security number had been included in the warrant for Kaschell Stokes in error or that Stokes had fraudulently used that number sometime in the past. As a result, he removed Mr. Gardner's social security number from the system. He then contacted Dispatcher Secoy and advised her of the error. Dispatcher Secoy immediately radioed the officers, told them that Mr. Gardner was not the subject of the warrant.

Mr. Gardner was released at 10:41 a.m. after being detained for about fifty minutes.

## II.

### A. Federal Claims

Mr. Gardner alleges federal civil rights violations, pursuant to 42 U.S.C. § 1983. Counts I through VI are brought against Officer Powalie and Officer Chicon, in their

individual and official capacities, for allegedly unreasonably failing to recognize from the physical description contained in the warrant that Mr. Gardner was not Kaschell Stokes, resulting in Mr. Gardner's alleged unlawful arrest and the searches of his person and vehicle. Count VII is brought against the Villages of Grand River and Fairport Harbor, their mayors and police chiefs, in their individual and official capacities, for allegedly failing to properly train, supervise, control and discipline Officer Powalie and Officer Chicon, respectively. Count XV is brought against Sheriff McFaul, in his official capacity, and Cuyahoga County, Ohio, for allegedly maintaining a policy of allowing the constitutional rights of innocent citizens to be violated as a means of verifying the accuracy of outstanding warrants issued prior to 1988. Count XVI is brought against Sheriff McFaul and Cuyahoga County, Ohio for allegedly failing to properly train, supervise, control and discipline its employees. Count XVII is brought against dispatcher Jewell, in his official capacity, for allegedly causing Mr. Gardner to be unlawfully detained and searched.

## III.

### A. *Summary Judgment Standard*

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination

of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (quoting *Anderson,* at 248–49, 106 S.Ct. at 2510–11 (1986)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir. 1995). The text of FED.R.CIV.P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon

the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. U.S.*, 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)).

FED.R.CIV.P. 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

**B.** *42 U.S.C. § 1983*

42 U.S.C. § 1983 "is not itself a source of substantive rights" but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979). To succeed on a cause of action under 42 U.S.C. § 1983, a plaintiff must prove that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of law. *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir.1991), *cert. denied*, 502 U.S. 1032, 112 S.Ct. 872, 116 L.Ed.2d 777 (1992). Neither a supervisor nor a municipal employer of a person who deprived plaintiff of his constitutional right is vicariously liable for the wrongdoer's actions. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). When a plaintiff sues the wrongdoers supervisor, he must demonstrate that the supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate. *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir.) *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). If a plaintiff sues a municipality he must demonstrate that he suffered a constitutional wrong as a result of an official policy, custom, or practice. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978).

## C. Constitutional Injury

In this case, Mr. Gardner claims that his detention due to inaccurate information and the subsequent search of his person and vehicle infringed his Fourth Amendment right to be free of unlawful searches and seizures, his Fourteenth Amendment right to be free of deprivations of liberty, as well as his right to be free from unreasonable detention. These deprivations he alleges were caused by the officers unreasonable failure to recognize from the physical description contained in the warrant that he was not Kaschell Stokes and by the failure of the Cuyahoga County Sheriff's office to review, on a monthly basis, pre–1988 warrants for misinformation.

## D. Defendants Powalie and Cichon in their Individual Capacities

■ Mr. Gardner argues that the actions of Officers Powalie and Chicon infringed upon his Fourteenth Amendment substantive due process rights. Mr. Gardner alleges that both Officer Powalie and Officer Chicon unquestionably knew that he was not the person sought by the warrant and yet they seized and searched him based on the warrant.

The Due Process Clause is contained in the Fourteenth Amendment to the United States Constitution. It declares that no State shall "deprive any person of life, liberty, or property, without due process of law." The clause applies to substantive and procedural matters. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). As a general matter, the United States Supreme Court has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994).

In *Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716 (6th Cir.1996), the Sixth Circuit explained that there are two types of substantive due process claims:

> This court has recognized two categories of substantive due process rights:
>
> The first type includes claims asserting denial of a right, privilege, or immunity secured by the Constitution or by federal statute other than procedural claims under 'the Fourteenth Amendment *simpliciter.'*
>
> The other type of claim is directed at official acts which may not occur regardless of the procedural safeguards accompanying them. The test for substantive due process claims of this type is whether the conduct complained of 'shocks the conscience' of the court.
>
> *Mertik v. Blalock,* 983 F.2d 1353, 1367–68 (6th Cir.1993) The first type of claim exists, for example when a plaintiff alleges that his right to be free from unreasonable seizures under the Fourth Amendment was violated. The latter type of claim, however, does not 'require [ ] a claim that some specific guarantee of the Constitution apart from the due process clause be violated ... This is a substantive due process right akin to the 'fundamental fairness' concept of procedural due process.'

*Id.* at 724 (citations omitted).

In regard to the second category of substantive due process claims, Mr. Gardner claims that the conditions and length of his seizure and the searches which occurred are so significantly shocking as to implicate substantive due process theories of recovery. *See Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). Assuming arguendo that Mr. Gardner has sufficiently implicated a deprivation of a liberty interest under color of state law, and that state postdeprivation procedures are inadequate to remedy the deprivation, *see Miller v. Columbus,* 920 F.Supp. 807, 818 (1996), the Court nevertheless finds that the officers are entitled to summary judgment as the evidence submitted fails to reveal that the conduct of the Defendants rises to the level of a substantive due process violation actionable under § 1983.

Here, the police officers conduct does not "shock the conscience." LEADS indicated that Mr. Gardner's social security number matched a social security number used by Kaschell Stokes who was wanted in connection with an outstanding felony arrest warrant and who was to be considered armed and dangerous. The physical identity which was provided by the dispatcher to Officer Powalie matched the physical description of Mr. Gardner. With this limited information, Officer Powalie observed Mr. Gardner, who was sitting in his vehicle, "lunge" for something on the passenger side of his vehicle. He exited his vehicle with his service revolver drawn and ordered Mr. Gardner to remain in his vehicle but to place his hands outside of the window. When backup assistance arrived, the officer ordered Mr. Gardner was to exit his vehicle. He then conducted a pat down search of Mr. Gardner and handcuffed him. There is simply no evidence before the Court that at the time of these events, the officers were aware that Mr. Gardner was not the man sought by the warrant. Given these facts, the Court can but conclude that the officers acted reasonably and consistent with the information provided to them by the dispatcher. Therefore, the alleged deprivation of liberty in this case in no way approaches what could be deemed shocking. Accordingly, no due process violation has been shown and the officers are entitled to summary judgment.

■ Defendants have also moved for summary judgment on Mr. Gardner's procedural due process claim. Procedural due process is the process which government provides prior to depriving individuals of their interests in life, liberty, or property. If the procedure is fair and reasonable, and there is adequate notice and a fair hearing, there has been procedural due process. *Haag v. Cuyahoga County,* 619 F.Supp. 262 (1985), affd. without opinion, 798 F.2d 1414 (6th Cir.1986).

■ To maintain an action under 42 U.S.C. § 1983 based on a violation of procedural due process, the plaintiff has the burden of proving the inadequacy of state processes, including state damage remedies, to redress the claimed wrong. Specifically, the plaintiff must show that the defendant violat-

ed a constitutional right under color of law and that: (1) the state does not provide any remedy; (2) the state provides a remedy, but it is inadequate; or (3) the state provides an adequate remedy in form, both procedurally and in damages, but the state failed to apply or misapplied the remedy. *Id.,* at 278; *Mansfield Apartment Owners v. City of Mansfield,* 988 F.2d 1469, 1475 (6th Cir. 1993). An adequate post-deprivation remedy may be provided by state tort laws. *Wagner v. Higgins,* 754 F.2d 186 (6th Cir.1985).

■ Again, for purposes of argument only, the Court will assume that Mr. Gardner has sufficiently implicated a deprivation of a liberty interest under color of law. However, in this instance, Mr. Gardner concedes in his summary judgment response that there are adequate state law tort remedies available to him. Therefore, the Court finds that there are no genuine issues of material fact, and the Defendants are entitled to summary judgment as a matter of law.

Mr. Gardner also asserts that his constitutionally-protected right to be secure in his person and effects against unreasonable searches and seizure was violated by the individual officers.

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and person or things to be seized.

Mr. Gardner begins with the argument that his initial stop by Officer Powalie was without probable cause and therefore unlawful. "Whether a traffic stop violates the Fourth Amendment must be evaluated ... by undertaking an objective assessment of an officer's action in light of the facts and circumstances that are known to him." *United States v. Ferguson,* 8 F.3d 385, 391 (6th Cir.1993) (*en banc*) (*cert. denied,* 513 U.S. 828, 115 S.Ct. 97, 130 L.Ed.2d 47). The

Sixth Circuit maintains, "that so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment ... this probable cause determination will turn on what the officer knew when he made the stop." *Ferguson*, at 392 (citing, *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990)).

■ In this case, Officer Powalie's stop of Mr. Gardner was entirely proper. Officer Powalie testified at his deposition that he observed a radar detector reading indicating that Mr. Gardner was traveling 42 miles per hour in a 25 mile per hour zone. Mr. Gardner himself does not deny that he was traveling at a rate of speed in excess over the posted limit. Moreover, under *Ferguson*, the existence of probable cause renders irrelevant the fact that Officer Powalie did not issue Mr. Gardner a traffic citation. *See United States v. Letourneau*, 944 F.Supp. 619 (N.D.Ohio 1996); *Owens v. Carpenay*, 939 F.Supp. 558, 566 (1996). Because Officer Powalie had probable cause to believe that a traffic violation had occurred, the stop was not unlawful.

■ Next, the case law demonstrates that given a sufficient level of suspicion, the officers could search Mr. Gardner's vehicle for weapons without first arresting him. In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court held that a police officer's reasonable belief that [a] suspect is potentially dangerous" permitted that officer "to conduct an area search of the passenger compartment [of an automobile] to uncover weapons."

In this case, the evidence demonstrates that during a routine license check, the dispatcher informed Officer Powalie that there was a felony warrant for an individual matching Mr. Gardner's social security number. The dispatcher further advised officer Powalie that the warrant cautioned that the suspect was to be considered armed and dangerous. After receiving this information, Officer Powalie saw Mr. Gardner, who was sitting in his vehicle, lunge for something on the passenger side of his vehicle. At this point, it became objectively reasonable for

Officer Powalie, who did not have a copy of the warrant, to believe that Mr. Gardner was possibly armed and therefore potentially dangerous. Consequently, at that point, Officer Powalie was entitled to perform a pat-down search of Mr. Gardner and search Mr. Gardner's vehicle, without first arresting Mr. Gardner.

Having concluded that the defendant officers acted properly in conducting a limited search of Mr. Gardner and his vehicle after they were told that there was an outstanding felony warrant for an individual matching Mr. Gardner's social security number and that the warrant cautioned that the suspect was to be considered armed and dangerous, the Court needs to consider whether Mr. Gardner was subjected to an illegal seizure at some point. So long as the detention of Mr. Gardner was narrowly tailored to its underlying justification, there can be no illegal seizure. *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir.1995); *See also Howard v. Regional Transit Authority*, 667 F.Supp. 540, 546 (1987) ("[t]o maintain a cause of action under § 1983 for false arrest or imprisonment due to mistaken identity, the plaintiff must demonstrate either that the arrest warrant is invalid, or that the law enforcement officers acted unreasonably and failed to properly consider the information regarding the outstanding warrant, which they obtained from the computer system.").

Any detention of Mr. Gardner beyond the purposes of an initial traffic stop can be justified only by a reasonable suspicion of some wrongdoing beyond the traffic violation. *Mesa*, 62 F.3d at 162. This reasonable suspicion need not have been tantamount to probable cause to believe that Mr. Gardner had engaged in criminal activity. Rather, as explained by the Sixth Circuit, "[u]nder *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and related cases, a type of seizure has emerged that is less than a full arrest and justified by less than probable cause." *United States v. Richardson*, 949 F.2d 851 (6th Cir.1991).

In this case, Mr. Gardner contends that a reasonable person in his position would have believed himself under arrest rather than

subject to merely an appropriate form of detention. In particular, he points to the fact that the officers had their guns drawn when they first approached him and that they handcuffed him. However, *Terry* and its progeny do not establish that the use of force necessarily equates to a full arrest, but instead require that "[t]he scope of the detention must be carefully tailored to its underlying justification." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). Accordingly, courts have found that police officers may draw guns or use handcuffs in the course of a *Terry* stop when such measures are necessary under the circumstances confronting those officers. *See, e.g., United States v. Walker*, No. 94–3521, 1995 WL 141343 (6th Cir. Mar. 31, 1995); *United States v. Smith*, 3 F.3d 1088, 1094–96 (7th Cir.1993).

■ This Court concludes that the actions taken by the defendant officers under the circumstances with which they were confronted did not constitute an illegal seizure. The dispatcher cautioned the officers that the suspect was to be considered armed and dangerous. Moreover, Officer Powalie observed Mr. Gardner reaching around the passenger side of his vehicle. Accepting these undisputed facts as true, this Court can but conclude that the officers used that amount of force necessary to ensure their safety. This threat to safety is the key justification for the officer's use of an appropriate level of force without placing Mr. Gardner under arrest. *See Owens v. Carpenay, supra* at 567–68.

■ Moreover, this Court cannot conclude that the officers detained Mr. Gardner for an unreasonable amount of time. From the evidence presented it is clear that the officers, who did not have a copy of the warrant, detained Mr. Gardner only for only as long as it took for them to confirm that Mr. Gardner was not in fact the person sought by the outstanding warrant.

Mr. Gardner also alleges that the inventory search of his vehicle and the search of his body for tattoos and scars were in violation of his Fourth Amendment rights. The Fourth Amendment prohibits only unreasonable searches. *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). To determine reasonableness, courts must balance the legitimate governmental interests promoted by the search against the intrusiveness of the search on the individual. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). A frequently-quoted definition of reasonableness appears in *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979):

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it conducted.

*Id.* at 559, 99 S.Ct. at 1884.

■ With regard to the inventory of Mr. Gardner's vehicle, Officer Chicon testified at his deposition that in anticipation of taking Mr. Gardner in custody, he conducted a non-investigatory inventory inspection of the trunk of Mr. Gardner's vehicle. Mr. Gardner maintains that this search was conducted in violation of his Fourth Amendment rights because the officers did not prepare an inventory form in accordance with the written procedures of both Fairport Harbor and Grand River. He contends that in the absence of an inventory list the only plausible reason for the search was a pretext to look for incriminating evidence.

Where police officers who inventory the contents of an automobile for impoundment purposes follow standardized procedures and do not act in bad faith or for the sole purpose of investigating criminal conduct, it is well established that the search can pass constitutional muster notwithstanding the absence of a search warrant based on probable cause. *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Colorado v. Bertine*, 479 U.S. 367, 371–373, 107 S.Ct.

738, 740–742, 93 L.Ed.2d 739 (1987); *United States v. Longman,* 533 F.Supp. 176, 179 (1982).

In this case, the evidence is that standard inventory procedures required the officer to inventory the vehicle's contents, either at the scene or at the place of impoundment and to complete appropriate forms for personal property. Officer Chicon explained that inventory forms were not completed in this case because the vehicle was never actually towed or impounded as it turned out that the outstanding warrant was not for Mr. Gardner. In this light, the Court does not conclude that Officer Chicon acted in derogation of established inventory procedures. The procedures do not require an officer to complete inventory forms when, for reasons such as those presented here, the vehicle is never actually towed or impounded. Moreover, there has been no showing that the officers acted in bad faith or for the sole purpose of investigation. Therefore, the search at bar does not exceed the scope of a legitimate inventory search. *See United States v. O'Bryant,* 775 F.2d 1528, 1534 (11th Cir.1985) (court refused to invalidate an otherwise reasonable search for failure to compile a complete written inventory); *See also United States v. Rose,* 1993 WL 539248.

 Finally, Mr. Gardner claims that the search of his body for tattoos and scars was unconstitutional. The evidence shows that this search consisted of Mr. Gardner voluntarily raising his sleeves and shirt. Such a limited search conducted with Mr. Gardner's consent does not violate the Fourth Amendment. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Ohio v. Robinette,* —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996); *United States v. Richardson,* 949 F.2d 851 (6th Cir.1991).

With the conclusion that Mr. Gardner has failed to assert the existence of the deprivation of a constitutional violation, the Court need not reach the issue of qualified immunity. *Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1792, 114 L.Ed.2d 277 (1991).

### E. Official Capacity and Municipality Claims

 Official capacity suits operate as suits against the government itself. *Monell v. Department of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). Accordingly, Mr. Gardner must demonstrate that he suffered a constitutional wrong as the result of an official policy, custom, or practice and show a causal link between that policy and the harm to the plaintiff. *See id.; Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir.1993); *Searcy v. City of Dayton,* 38 F.3d 282, 287 (6th Cir.1994). He attempts to make this showing in two ways. First, Mr. Gardner asserts that Defendants have a custom or policy of ignoring constitutional violations by subordinate officers as evidenced by their failure to investigate citizen complaints of constitutional violations and by their failure to discipline subordinate officers. There is, however, no evidence, that Mr. Gardner ever voiced a complaint with the municipalities regarding the officers' treatment of him. Therefore, because Mr. Gardner has not put forth evidence that either of the municipalities had a policy or custom of deliberate indifference to the constitutional rights of citizens, which caused him harm, a reasonable fact finder could not find the municipalities liable, and the Defendants' Motion for Summary Judgment must be granted.

 Mr. Gardner also attempts to establish municipal liability based upon a claim of inadequate training. According to the Supreme Court,

Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

Mr. Gardner's complaint refers only in the most cursory way to the municipalities' roles in training the individual officers that arrested Mr. Gardner. In his memorandum op-

posing summary judgment, Mr. Gardner contends that deliberate indifference is evidenced by their method of implementing their policies and procedures on how to prevent violations of constitutional rights during search and seizure and felony arrest situations. According to Mr. Gardner, the fact that these procedures were disseminated in writing, were followed up with on-the-job training, and the opportunity to ask questions at monthly meetings, evidences the municipalities' disregards for the rights of their citizens. Mr. Gardner baldly asserts that these methods are not a sufficient means of educating officers on the complexities of search and seizure and felony arrests.

Based the fact that the municipalities provided training and had policies dealing with the constitutional rights here at issue demonstrates that the municipalities were not deliberately indifferent to the rights of their citizens. Having come forward with this evidence, it is incumbent upon Mr. Gardner to point to specific facts that give rise to a genuine issue of fact as to deliberate indifference. He has failed to do so. The mere fact that the municipalities distribute policies and procedures by writing, could not lead a rational fact finder to conclude that Grand River or Fairport Harbor evidenced a deliberate indifference to their citizens' constitutional rights. Therefore, the Defendants are entitled to summary judgment on the inadequate training claim.

■ Mr. Gardner also alleges that his constitutional rights were violated as a result of Cuyahoga County policy. He argues that the County's procedures for the updating of warrants issued before 1988, drafted by Sergeant Harry Livingston, the officer in charge of communications for the Cuyahoga County Sheriff's office, constitute official county policy sufficient to establish municipal liability in this case. At his deposition, Sergeant Livingston testified that in January 1988, a procedure was instituted whereby multiple social security numbers would be included in a warrant only if a check of the social security numbers determined that they were not attributable to a person other than the wanted subject. Warrants issued prior to January 1, 1988 numbered in the thousands, and it was decided that the new social security number procedure would not be utilized on these warrants. Rather, an update would be done only if the warrant came into question. It is this decision of the County not to include in their revised procedures the verification of multiple social security numbers in warrants issued prior to 1988 that Mr. Gardner contends creates a policy of allowing the constitutional rights of innocent citizens to be violated as a means of verifying the accuracy of outstanding warrants.

Again, under *Monell*, the County cannot be found liable unless Mr. Gardner can establish that an officially executed policy leads to, causes, or results in the deprivation of a constitutionally protected right. *Monell*, 436 U.S. at 658, 98 S.Ct. at 2018. A municipality is liable for an official's unconstitutional action only when the official is the one who has the "final authority to establish municipal policy with respect to the action ordered," *id.* at 481, 106 S.Ct. at 1299, and the official has made "a deliberate choice to follow a course of action ... from among various alternatives," *id.* at 483, 106 S.Ct. at 1300. "Mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." *O'Brien v. City of Grand Rapids*, 23 F.3d 990 (6th Cir.1994) (citing *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.1993)). As cautioned by the Sixth Circuit, "[d]iscretion to act is not to be confused with policymaking authority; no municipal liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be 'indistinguishable' from *respondeat superior* liability." *Feliciano*, 988 F.2d at 656 (citation omitted). Whether an official has "final policy making authority" is a question of state and local law.

Despite his representations to the contrary, Mr. Gardner has not even alleged, much less shown that Sergeant Livingston possessed final authority to establish the "policy" at issue here. Accordingly, Mr. Gardner's arguments based on Sergeant Livingston's involvement must fail. For this

reason, the Court concludes that Mr. Gardner has failed to sustain his burden on summary judgment and rebut Defendants' assertion that no policy exists.

## IV.

### A. *State Claims*

Mr. Gardner is also seeking recovery under state tort law claims. District courts have discretion to dismiss supplemental state claims if the federal claims are dismissed before trial. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Having dismissed Mr. Gardner's federal claims, the Court also exercises its discretion and dismisses Mr. Gardner's pendent state law claims without prejudice.

## V.

After a thorough and complete review and analysis of all the information submitted by the parties in this case, it is abundantly clear that the law enforcement officers in his case conducted themselves in exemplary fashion. Officers Powalie and Chicon worked diligently with Lake County and Cuyahoga County Sheriff's officials to determine whether the warrant containing Plaintiff's social security number actually related to this Plaintiff. The officers had legitimate concerns for their own safety under the circumstances presented. Rather than being sued, the officers should be commended for using good judgment along with the exercise of discretion to determine the validity of the outstanding warrant.

## VI.

For the foregoing reasons, Defendants' Motions For Summary Judgment (Doc. Nos. 58, 61, and 65) are GRANTED. Having dismissed Mr. Gardner's federal claims, this Court exercises its discretion and dismisses Mr. Gardner's pendent state law claims without prejudice.

IT IS SO ORDERED.

### ORDER

Defendants' Motions For Summary Judgment (Doc. Nos. 58, 61, and 65) are GRANTED. Having dismissed Plaintiff's federal claims, this Court exercises its discretion and dismisses Plaintiff's pendent state law claims without prejudice. All costs to Plaintiff.

IT IS SO ORDERED.